**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
Jacksonville Division

| | |
|---|---|
| _____ ) | |
| In re: ) | |
| ) | |
| KAREN W. HALL ) | Case No. 3:22-bk01326-BAJ |
| SPUDDOG FARM PROPERTIES, LLC ) | Case No. 3:22-bk01341-BAJ |
| ) | |
| ) | Chapter 11 Proceeding |
| Debtors. ) | (Jointly Administered Cases) |
| ) | |
| _____) | |
| | |
| KAREN W. HALL, ) | |
| ) | Case No. 3:22-bk01326-BAJ |
| Applicable Debtor, ) | |
| ) | |
| and ) | |
| ) | |
| SPUDDOG FARM PROPERTIES LLC, ) | |
| ) | Case No. 3:22-bk01341-BAJ |
| Applicable Debtor. ) | |
| _____ ) | |
| NUTRIEN AG SOLUTIONS, INC., formerly ) | |
| known as CROP PRODUCTION SERVICES, ) | Adv. Proc. No._____ |
| INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KAREN W. HALL, ) | |
| ) | |
| SPUDDOG FARM PROPERTIES LLC, ) | |
| ) | |
| BENNY F. HALL, SR., individually and trading ) | |
| as H&M Farms and Benny F. Hall & Sons Produce, ) | |
| ) | |
| BENNY F. HALL & SONS, LLC, ) | |
| ) | |
| BENNY F. HALL & SONS TRUCKING CO., ) | |
| INCORPORATED, ) | |
| ) | |

1

EASTERN SHORE GRAIN, INCORPORATED,    )
                                                                        )
HOLDEN'S CREEK FARM, LLC,                        )
                                                                        )
and                                                                    )
                                                                        )
FARM PROPERTIES, LLC,                             )
                                                                        )
                              Defendants.              )
_____)
                                                                        )

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

Nutrien Ag Solutions, Inc., formerly known as Crop Production Services, Inc., ("Nutrien" or "Plaintiff"), by counsel, pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6) and Rules 4007, 7001, and 7019 of the Federal Rules of Bankruptcy Procedure, files this Complaint to Determine Dischargeability (the "Complaint") against Karen W. Hall ("Karen Hall"), Spuddog Farm Properties LLC ("Spuddog" and collectively with Karen Hall the "Debtors") and the other defendants, seeking certain relief, including an order declaring certain debts owed by the Debtors to Nutrien to be nondischargeable. In support of its Complaint, Nutrien states as follows:

## INTRODUCTION

1.      This Complaint is filed seeking to determine the dischargeability of sums due to Nutrien from the Debtors as a result of the Debtors' actions to thwart, frustrate, and defraud Nutrien as a creditor of Benny F. Hall & Sons, LLC ("Benny F. Hall and Sons") and Benny F. Hall, Sr., individually and/or doing business as H&M Farms or Benny F. Hall & Sons Produce ("Benny Hall"), by transferring and commingling assets amongst the Debtors and the Debtors' alter egos; fraudulently conveying assets; and siphoning away assets subject to Nutrien's lien in an effort to defraud, hinder, and delay Nutrien's collection efforts and deprive Nutrien of its collateral.  The actions of the Debtors allowed the same business operations that were previously being conducted

in the name of Benny F. Hall & Sons and Benny Hall to continue to operate in different names while not making payment to Nutrien of the funds received from those operations, and at times involved the direct transfer of funds or property of Benny F. Hall & Sons or Benny Hall to or for the benefit of the Debtors and/or the Debtors' alter egos.

2.      On March 5, 2018, Nutrien filed a Petition for Detinue, Possession and Sale of Secured Property and Money Judgment against Benny Hall, individually and doing business as H&M Farms and Benny F. Hall & Sons Produce, Benny F. Hall & Sons and H & M Potato Farms, LLC  (the "Virginia Complaint") in the Circuit Court of Accomack County, Virginia (the "Virginia Court").

3.      On March 29, 2018, Benny Hall, individually and doing business as H&M Farms and Benny F. Hall & Sons Produce, Benny F. Hall & Sons and H & M Potato Farms filed their Answer to the Virginia Complaint (the "Virginia Answer").

4.      The Virginia Answer was verified pursuant to an Affidavit signed by Karen Hall.

5.      The Virginia Complaint was subsequently amended by the filing of a First Amended Complaint for Detinue, Possession and Sale of Secured Property and Money Judgment (the "Amended Virginia Complaint") adding claims against Karen Hall for some, but not all, of the amounts, in the Amended Virginia Complaint based on a guaranty executed by Karen Hall (the "H & M Guaranty").  The claims against Karen Hall in the Amended Virginia Complaint based on the H & M Guaranty relate to the accounts opened in the name of H & M Farms for farming operations in Florida and not the accounts opened in the name of Benny F. Hall & Sons for farming operations in Virginia.

6.      On May 24, 2019, the Virginia Court entered a Partial Final Judgment (the "Partial Final Judgment") granting judgment against all Defendants except for Karen Hall. As a result,

Nutrien is a judgment creditor of Benny F. Hall & Sons and Benny Hall, individually and doing business as H & M Farms and as Benny F. Hall & Sons Produce, through entry of the Partial Final Judgment against Benny Hall, individually and doing business as H & M Farms and as Benny F. Hall & Sons Produce; Benny F. Hall & Sons; and H & M Potato Farms, LLC ("H&M Potato Farms").  A copy of the Partial Final Judgment is attached hereto as **Exhibit A**.

7.      Karen Hall answered the Amended Virginia Complaint, and the Amended Virginia Complaint remains pending as to Karen Hall.

8.      After the Partial Final Judgment became final, Nutrien began collection efforts seeking to enforce the Partial Final Judgment and collect the sums due under the Partial Final Judgment through, *inter alia*, the issuance by the Virginia Court of Summonses to Answer Interrogatories to Benny Hall and Benny F. Hall & Sons (collectively, the "Summonses") and subpoenas duces tecum (the "Subpoenas") in connection with Summonses seeking documents.

9.      The Summonses were scheduled to be heard before Commissioner Henry P. Custis, Jr., (the "Commissioner") on August 28, 2019 (the "Hearing").

10.      Benny Hall appeared and testified on behalf of himself and Benny F. Hall & Sons at the Hearing on August 28, 2019.

11.      At the Hearing, the Commissioner allowed a partial examination, ordered production of documents, and then continued the Hearing generally. Additionally, following the Hearing, the Commissioner ordered that Nutrien be entitled to examine certain records located at the offices of Benny Hall and Benny F. Hall & Sons.

12.      Based on the information obtained through its investigation, on June 8, 2020, Nutrien initiated an action (the "2020 Action") by filing its Complaint in the Virginia Court against Karen Hall; Benny Hall; Benny F. Hall & Sons, LLC; Benny F. Hall & Sons Trucking Co.,

Incorporated; Eastern Shore Grain, Incorporated; Spuddog; Holden's Creek Farm, LLC; Farm Properties, LLC; World Business Lenders, LLC; Douglas E. Plocki, Trustee; Phillip S. Waters; Jennifer M. Waters; Robert G. Turner, Trustee; and Anita C. Johnson, Trustee.[1]

13.     Nutrien filed an Amended Complaint in the 2020 Action on September 13, 2021. The Amended Complaint remains pending against Karen Hall; Benny Hall; Benny F. Hall & Sons, LLC; Benny F. Hall & Sons Trucking Co., Incorporated; Eastern Shore Grain, Incorporated; Spuddog; Holden's Creek Farm, LLC; and Farm Properties, LLC (the "2020 Defendants"). World Business Lenders, LLC, and Douglas E. Plocki, Trustee, are also named as defendants as necessary parties to the Amended Complaint. A true and accurate copy of the Amended Complaint is attached to Nutrien's proof of claim, Claim No. 10 in the Court's claims register for the Karen Hall bankruptcy case and Nutrien's proof of claim, Claim No. 3 in in the Court's claims register for the Spuddog bankruptcy case.

14.     The Amended Complaint asserts claims against the 2020 Defendants for (1) Breach of Fiduciary Duty; (2) Trover/Conversion; (3) Voluntary Conveyance Under Virginia Code § 55.1-401; (4) Fraudulent Conveyance Under Virginia Code § 55.1-400; (5) Constructive Trust/Equitable Lien; (6) Rights of a Secured Party Under the Uniform Commercial Code; (7) Assumpsit; (8) Unjust Enrichment; (9) Joint Venture and/or Partnership; (10) Piercing the Corporate Veil and Alter Ego; (11) Successor Liability; (12) Tortious Interference with Contract; and (13) Aiding and Abetting Breach of Fiduciary Duty, Tortious Interference with Contract and Conversion.  Nutrien seeks a judgment against the 2020 Defendants jointly and severally on certain of the claims.

---

[1] Phillip S. Waters, Jennifer M. Waters, Robert G. Turner, Trustee, and Anita C. Johnson, Trustee, were named in the Complaint as necessary parties but have been dismissed pursuant to a Partial Dismissal Order entered on March 17, 2021, because they were no longer necessary parties.

15.     Karen Hall and Spuddog have answered the Amended Complaint, and the Amended Complaint remains pending against the 2020 Defendants.

16.     Prior to the Petition Dates (as defined below), Nutrien filed a Motion to Consolidate, Amend or for Other Relief in the Virginia Court, and the Virginia Court ruled at a hearing held on April 27, 2022, that the 2020 Action and 2018 Action would be consolidated and merged.[2]  However, as of the Petition Dates, the Virginia Court had not yet entered the order consolidating the cases.

17.     Based on information obtained since entry of the Partial Final Judgment through collection efforts, including the testimony of Benny Hall at the Hearing, the review of documents examined at the judgment debtors' offices and produced pursuant to the Subpoenas, and the papers and testimony in the Debtors' bankruptcies, Nutrien discovered certain additional facts supporting the causes of action asserted in this Complaint.

## JURISDICTION AND VENUE

18.     On or about July 1, 2022 (the "Hall Petition Date"), Karen Hall filed a voluntary petition under Chapter 11 of Title 11 of the U.S. Code (the "Bankruptcy Code"), electing to proceed under Subchapter V of Chapter 11.

19.     In her Original Schedule E/F, filed July 1, 2022, Karen Hall listed Nutrien as an unsecured creditor in the amount of $3,000,000.00. Karen Hall indicated that the debt to Nutrien is disputed. In her Amended Schedules, filed August 16, 2022, Karen Hall indicated that the debt to Nutrien is unliquidated and disputed. In her Second Amended Schedules, filed September 22, 2022, Karen Hall also indicates that the debt to Nutrien is contingent. Karen Hall also listed Crop

---

[2] The Virginia Court also ruled it would sever for trial the breach of contract claim based on the H & M Guaranty from the consolidated action.

Production Services, Inc. as a creditor "For Notice Purposes Only."[3]

20.     On July 5, 2022, (the "Spuddog Petition Date," and with the Hall Petition Date, the "Petition Dates"), Spuddog filed a petition under Chapter 11 of Title 11 of the Bankruptcy Code, electing to proceed under Subchapter V of Chapter 11.

21.     Spuddog did not list Nutrien as a creditor in its Original Schedules. In its Amended Schedule E/F filed on August 16, 2022, Spuddog listed Nutrien as an unsecured creditor in the amount of $3,000,000.00. Spuddog indicated that the debt to Nutrien is unliquidated and disputed. In Spuddog's Second Amended Schedule E/F filed on September 22, 2022, Spuddog also indicated that the debt to Nutrien is contingent.

22.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a "core" proceeding as set forth under 28 U.S.C. §§ 1408 & 1409.

23.     Venue is proper pursuant to 28 U.S.C. §§ 1408 & 1409.

## PARTIES

24.     Nutrien is a Delaware Corporation authorized to transact business in the Commonwealth of Virginia, and the State of Florida, and was previously known as Crop Production Services, Inc. Effective as of July 1, 2018, Nutrien Ag Solutions, Inc. changed its name from Crop Production Services, Inc. to Nutrien Ag Solutions, Inc. and filed a Certificate of Amendment to Certificate of Incorporation with the Delaware Secretary of State reflecting the name change on June 28, 2018.

25.     Pursuant to the filings in her bankruptcy case, Karen Hall asserts she is a resident of the State of Florida who, individually or through other entities or names, was previously

---

[3] The Second Amended Schedules reflect the debt to Crop Production Services, Inc. as contingent, unliquidated and disputed.

involved in farming operations in the Commonwealth of Virginia with her husband Benny Hall. Upon information and belief, at all times relevant to this Complaint, Karen Hall was a resident of the Commonwealth of Virginia.

26.     Karen Hall, either individually or jointly with Benny Hall, is a principal or manager of numerous related entities which have been used to delay, hinder, and defraud the collection efforts of Nutrien (collectively, the "Hall Entities"). The Hall Entities are the following:

a.    Benny F. Hall & Sons is a Virginia limited liability company formed in January 2013. Upon information and belief, at all times relevant to this Complaint, Benny F. Hall & Sons was managed or controlled by Karen Hall.

b.   Holden's Creek Farm, LLC ("Holden's Creek") is a Virginia limited liability company formed on December 18, 2013. Karen Hall has scheduled Holden's Creek as owned 100% by Karen Hall. Upon information and belief, at all times relevant to this Complaint, Holden's Creek was managed or controlled by Karen Hall.

c.   Spuddog is a Virginia limited liability company formed on February 17, 2016. Karen Hall has scheduled Spuddog as owned 50% by Karen Hall. Upon information and belief, at all times relevant to this Complaint, Spuddog was managed or controlled by Karen Hall.

d.   Farm Properties, LLC ("Farm Properties") is a Virginia limited liability company formed on June 9, 2015. Karen Hall has scheduled Farm Properties as owned 50% by Karen Hall. Upon information and belief, at all times relevant to this Complaint, Farm Properties was managed or

8

controlled by Karen Hall.

e.  Eastern Shore Grain, Incorporated ("Eastern Shore Grain") is a Virginia corporation formed on July 22, 2004. Karen Hall has scheduled Eastern Shore Grain as owned 50% by Karen Hall. Upon information and belief, at all times relevant to this Complaint, Eastern Shore Grain was managed or controlled by Karen Hall.

f.  Benny F. Hall & Sons Trucking Co., Incorporated ("Trucking") is a Virginia corporation formed on September 12, 2013. Karen Hall has scheduled Trucking as owned 50% by Karen Hall. Upon information and belief, at all times relevant to this Complaint, Trucking was managed or controlled by Karen Hall.

27.    Benny Hall is a resident of the Commonwealth of Virginia who was previously involved in farming operations in the Commonwealth of Virginia with Karen Hall and the Hall Entities and was also involved in farming operations in Florida.

28.    Benny Hall, Benny F. Hall & Sons, Holden's Creek, Farm Properties, Eastern Shore Grain and Trucking are named as parties to this Complaint to Determine Dischargeability of Debt to the extent that they are necessary parties because Nutrien seeks a finding that pierces and reverse pierces the corporate veil and/or finds that Karen Hall, Spuddog, Benny Hall, Benny F. Hall & Sons, Holden's Creek, Farm Properties, Eastern Shore Grain and Trucking are the alter egos of each other and are jointly and severally liable for the debts referenced herein.

## FACTUAL ALLEGATIONS

29.    As recognized and ordered by the Partial Final Judgment, Nutrien is a partially secured creditor of Benny F. Hall & Sons and Benny Hall.

30.    The indebtedness related to the accounts in the name of Benny F. Hall & Sons (the "Benny F. Hall & Sons Indebtedness") dates back as far as 2013.

31.    In connection with the Benny F. Hall & Sons Indebtedness, in February 2013, Benny F. Hall & Sons and Benny Hall filled out, executed and delivered to Nutrien a Customer Profile and Commercial Credit Agreement/Terms and Conditions, agreeing to all terms and conditions contained therein (the "Benny F. Hall & Sons Customer Profile") and, in 2014, filled out, executed and delivered to Nutrien a Security Agreement, agreeing to all the terms and conditions contained therein (the "Benny F. Hall & Sons Security Agreement"). The Benny F. Hall & Sons Customer Profile and the Benny F. Hall & Sons Security Agreement were executed in the Commonwealth of Virginia. A copy of the Benny F. Hall & Sons Customer Profile is attached hereto as **Exhibit B** and a copy of the Benny F. Hall & Sons Security Agreement is attached hereto as **Exhibit C**.[4]

32.    Pursuant to the Benny F. Hall & Sons Security Agreement, Benny F. Hall & Sons granted Nutrien a security interest in certain property (the "Benny F. Hall & Sons Collateral") owned by Benny F. Hall & Sons, including, but not limited to: all Crops and Farm Products and Accounts, General Intangibles, Documents, Chattel Paper and Other Rights to Payment, together with replacements, substitutions, products and proceeds, as more fully set forth in the Benny F. Hall & Sons Security Agreement.

33.    Nutrien properly perfected its security interest in the Benny F. Hall & Sons Collateral on February 8, 2018, by filing UCC Financing Statements (collectively the "Benny F. Hall & Sons Financing Statements") in the Clerk's Office of the Virginia State Corporation Commission and the Florida Secured Transaction Registry. Copies of the Benny F. Hall & Sons Financing Statements are

---

[4] The copies of the documents attached as exhibits to this Complaint have had account numbers and other personal identifiers redacted so reference to copies attached as exhibits means redacted copies, as applicable.

attached hereto collectively as **Exhibit D**.

34.     The documents related to the Benny F. Hall & Sons Indebtedness provide for the payment of Nutrien's attorneys' fees and collection costs in enforcing its rights related to and collecting the Benny F. Hall & Sons Indebtedness.

35.     The indebtedness related to the accounts in the name of Benny Hall doing business as H & M Farms (the "H & M Indebtedness") dates back as far as 2014.

36.     In connection with the H & M Indebtedness, in January 2014, Benny Hall filled out, executed, and delivered to Nutrien a Customer Profile and Commercial Credit Agreement/Terms and Conditions, agreeing to all terms and conditions contained therein (the "Benny Hall Customer Profile"), and a Security Agreement, agreeing to all terms and conditions contained therein (the "Benny Hall Security Agreement"). A copy of the Benny Hall Customer Profile is attached hereto as **Exhibit E** and a copy of the Benny Hall Security Agreement is attached hereto as **Exhibit F**.

37.     Pursuant to the Benny Hall Security Agreement, Benny Hall granted Nutrien a security interest in certain property (the "Benny Hall Collateral") owned by Benny Hall including, but not limited to: all Crops and Farm Products, Equipment, Inventory, Accounts, General Intangibles, Documents, Chattel Paper and Other Rights to Payment and Government Payments/Programs, together with replacements, substitutions, products and proceeds, as more fully set forth in the Benny Hall Security Agreement.

38.     Nutrien properly perfected its security interest in the Benny Hall Collateral on February 8, 2018, by filing UCC Financing Statements (collectively the "Benny Hall Financing Statements") in the Clerk's Office of the Virginia State Corporation Commission and the Florida Secured Transaction Registry. Copies of the Benny Hall Financing Statements are attached hereto collectively as **Exhibit G**.

39.     The Benny Hall Collateral secures all indebtedness of Benny Hall to Nutrien, including the H & M Indebtedness and the Benny F. Hall & Sons Indebtedness.

40.     The documents related to the H & M Indebtedness provide for the payment of Nutrien's attorneys' fees and collection costs in enforcing its rights related to and collecting the H & M Indebtedness.

41.     According to Debtors' filings in these bankruptcy cases, the Debtors' "need for filing bankruptcy largely dates back to 2015" when "Benny F. Hall & Sons, LLC lost its seasonal line of credit."

42.     By Deed dated March 14, 2016, Benny Hall and Karen Hall transferred multiple parcels of real property to Spuddog (the "Spuddog Transfer"). A copy of the Deed transferring the real property to Spuddog is attached hereto as **Exhibit H**.

43.     The Spuddog Transfer occurred while Karen Hall and Benny Hall were liable to Nutrien for the H & M Indebtedness pursuant to the Guaranty.

44.     According to testimony at the Hearing by Benny Hall, the reason that the Spuddog Property was transferred to Spuddog was advice of counsel.

45.     Upon information and belief, no consideration was received by Karen Hall or Benny Hall in connection with the Spuddog Transfer, and Karen Hall and Benny Hall were insolvent at the time of the Spuddog Transfer or rendered insolvent by the Spuddog Transfer.

46.     By Deed of Gift dated July 17, 2017, Benny Hall transferred certain real property to Farm Properties (the "Farm Properties Real Property Transfer"). A copy of the Deed of Gift is attached hereto as **Exhibit I**.

47.     The Farm Properties Real Property Transfer occurred while Benny Hall was liable to Nutrien.

48.     According to the testimony at the Hearing, the reason for the Farm Properties Transfer was advice of counsel and Benny Hall did not recall receiving any consideration for the Farm Properties Transfer.

49.     In June 2015 and July 2016, several parcels of real property were transferred to Farm Properties by deeds from Benny Hall and Benny F. Hall, Jr. (the "Farm Properties Purchases").

50.     Upon information and belief, the Farm Properties Purchases were acquired in the sale from a partnership dissolution and the source of the funds is unknown. To the extent that the source of funds for the Farm Properties Purchases were funds or property of Benny F. Hall & Sons, Benny Hall, and/or Karen Hall, then the funds or property transferred in consideration of the Farm Properties Purchases were transferred while the transferee was insolvent, or rendered the transferee insolvent, and were not for adequate consideration at law.

51.     On February 7, 2018, Nutrien notified Benny F. Hall & Sons and Benny Hall of certain defaults related to the Benny F. Hall & Sons Indebtedness and the H & M Indebtedness and demanded payment of the Benny F. Hall & Sons Indebtedness and the H & M Indebtedness.

52.     In February 2018 and February 2019 and pursuant to the Food Security Act of 1985 and other applicable law, Nutrien sent letters to potential purchasers of crops from Benny F. Hall & Sons and Benny Hall notifying them of Nutrien's security interest in the crops grown and owned by Benny Hall and Benny F. Hall & Sons.

53.     Benny Hall and Benny F. Hall & Sons were each served with the Virginia Complaint on March 8, 2018, and responded to the Virginia Complaint on March 29, 2018, through a response verified by Karen Hall. Accordingly, as of no later than March 29, 2018, Karen Hall, Benny Hall, Benny F. Hall & Sons, Holden's Creek, Farm Properties and Spuddog knew that

Benny Hall and Benny F. Hall & Sons were in default to Nutrien and that Nutrien was entitled to the possession of the Benny Hall Collateral and the Benny F. Hall & Sons Collateral.

54.     On May 7, 2018, Benny Hall executed the document attached hereto as **Exhibit J** (the "Resignation").  According to the language of the Resignation, Benny Hall resigned as the managing member of Benny F. Hall & Sons and, at that time, assigned all his rights and interest in Benny F. Hall & Sons to Karen Hall.

55.     Upon information and belief, at the time of the Resignation, Karen Hall became the individual in charge of and/or manager of Benny F. Hall & Sons.

56.     Upon information and belief, during all relevant times in this Complaint, prior to and as of May 7, 2018, Benny F. Hall & Sons and Benny Hall were insolvent and remain insolvent as of the filing of this Complaint.

57.     In May 2018, after Benny Hall resigned as manager of Benny F. Hall & Sons and Karen Hall became the manager and assumed control of Benny F. Hall & Sons, bank records indicate that property of and funds due to Benny F. Hall & Sons, including without limitation proceeds related to crops or from the sale of crops belonging to Benny F. Hall & Sons (which were subject to the lien of Nutrien) and other property of Benny F. Hall & Sons began being transferred to, paid to, or deposited into the bank accounts of Holden's Creek, Farm Properties and/or the other Hall Entities and/or their insiders or affiliates (collectively the "Transfers").

58.     Upon information and belief, all of the Transfers took place while Karen Hall was the manager/person in charge of Benny F. Hall & Sons.

59.     Holden's Creek is a shipping and trucking company and has never conducted farming operations; despite this, the following checks deposited into the Holden's Creek bank account (collectively, the "Holden Crop Deposits") are, upon information and belief, not payments

for shipping or trucking services but instead are payments for the sale of crops. Upon information

and belief, the Holden Crop Deposits are examples of some of the Transfers and actually reflect

sales of Benny F. Hall & Sons crops or other assets that were transferred or paid to Holden's Creek

and deposited into the Holden's Creek bank account. Upon information and belief, the Holden

Crop Deposits relate to property of Benny F. Hall & Sons which was subject to the lien of Nutrien:

a. Check #79389 payable to Holden's Creek in the amount of $21,879.28 dated June 18, 2018, from Associated Grain.[5]

b. Check #79393 payable to Holden's Creek in the amount of $16,906.10 dated June 20, 2018, from Associated Grain.

c. Check #79454 payable to Holden's Creek in the amount of $10,000.00 dated June 27, 2018, from Associated Grain.

d. Check #79478 payable to Holden's Creek in the amount of $5,908.74 dated July 2, 2018, from Associated Grain.

e. Check #40240 payable to Holden's Creek in the amount of $18,983.36 dated August 30, 2018, from M & M Packaging, Inc.[6]

f. Check #40360 payable to Holden's Creek in the amount of $12,739.30 dated September 25, 2018, from M & M Packaging, Inc.

g. Check #79891 payable to Holden's Creek in the amount of $15,851.27 dated October 5, 2018, from Associated Grain.

h. Check #79921 payable to Holden's Creek in the amount of $28,916.76

---

[5] Upon information and belief, Associated Grain, Inc. is or was an entity located in Accomack County, Virginia that purchases or purchased grain or other farm crops from farmers.
[6] Upon information and belief, M & M Packaging, Inc. is a merchant that purchases farm crops from farmers for resale.

dated October 11, 2018, from Associated Grain.

  i. Check #79935 payable to Holden's Creek in the amount of $6,431.58 dated October 12, 2018, from Associated Grain.

  j. Check #79986 payable to Holden's Creek in the amount of $18,461.10 dated October 23, 2018, from Associated Grain.

  k. Check #80025 payable to Holden's Creek in the amount of $37,531.21 dated October 29, 2018, from Associated Grain.

  l. Check #80038 payable to Holden's Creek in the amount of $38,972.14 dated October 31, 2018, from Associated Grain.

  m. Check #80203 payable to Holden's Creek in the amount of $4,400.49 dated November 26, 2018, from Associated Grain.

  n. Check #48609 payable to Farm Properties in the amount of $15,705.00 dated September 6, 2019, from Kaleck Brothers, Inc.[7] and deposited to Holden's Creek.

60. Copies of the checks reflecting the Holden Crop Deposits are attached hereto collectively as **Exhibit K**.

61. Copies of some documents relating to the issuance of the checks reflecting the Holden Crop Deposits are attached hereto collectively as **Exhibit L**.

62. Upon information and belief, there may be additional deposits into the Holden's Creek bank account that are from the sale or transfer of property or funds of Benny F. Hall & Sons.

63. Upon information and belief, and based on Benny Hall's testimony at the Hearing,

---

[7] Upon information and belief, Kaleck Brothers, Inc. is a merchant that purchases crops from farmers for resale.

Farm Properties has never been engaged in farming operations and Farm Properties 2016 tax returns do not reflect any income for Farm Properties other than a small amount of rental income.

64.    Upon information and belief, the following checks deposited into the Farm Properties bank account (collectively, the "Farm Properties Deposits") are examples of and reflect sales of crops or other assets that were transferred or paid to Farm Properties and deposited in the Farm Properties bank account. Upon information and belief, the Farm Properties Deposits relate to and are the proceeds of the same farming operations that Benny F. Hall & Sons conducted previously; as a result, the following Farm Properties Deposits may be subject to the lien of Nutrien:

    a.   Check #41764 payable to Farm Properties in the amount of $9,377.40 dated July 11, 2019 from M & M Packaging, Inc.

    b.   Check #41834 payable to Farm Properties in the amount of $8,479.21 dated July 17, 2019 from M & M Packaging, Inc.

    c.   Check #15880 payable to Farm Properties in the amount of $7,750.44 dated July 25, 2019 from Szawlowski Packers, LLC.[8]

    d.   Check #48442 payable to Farm Properties in the amount of $17,212.50 dated August 2, 2019 from Kaleck Brothers, Inc.

    e.   Check #18124 payable to Farm Properties in the amount of $9,693.23 dated July 22, 2019 from M. Bross, Inc.[9]

    f.   Check #48519 payable to Farm Properties in the amount of $14,310.00

---

[8] Upon information and belief, Szawlowski Packers, LLC is a merchant that purchases harvested potatoes from farmers on the Eastern Shore of Virginia where the Virginia farming operations referenced in this Complaint were located.

[9] Upon information and belief, M. Bross, Inc. is a merchant that purchases farm crops from farmers for resale.

dated August 16, 2019 from Kaleck Brothers, Inc.

g.   Check #42052 payable to Farm Properties in the amount of $18,862.20 dated August 22, 2019 from M & M Packaging, Inc.

h.   Check #0031267805 payable to Farm Properties in the amount of $8,302.29 dated August 20, 2019 from M. Bross, Inc.

i.   Check #3986 payable to Farm Properties in the amount of $4,200.00 dated September 9, 2019 from Mountain Valley, Inc.[10]

j.   Check #0034385967 payable to Farm Properties in the amount of $6,970.46 dated September 12, 2019 from M. Bross, Inc.

k.   Check #42089 payable to Farm Properties in the amount of $9,532.87 dated August 27, 2019 from M & M Packaging, Inc.

l.   Check #42128 payable to Farm Properties in the amount of $10,119.42 dated September 5, 2019 from M & M Packaging, Inc.

m.   Based on the records of Kaleck Brothers, Inc., Kaleck Brothers, Inc. issued a check for $15,705.00 to Farm Properties dated September 6, 2019. Nutrien does not have a copy of this check.

n.   Check #0034493964 payable to Farm Properties in the amount of $7,624.00 dated September 13, 2019 from M. Bross, Inc.

o.   Check #4011 payable to Farm Properties in the amount of $7,640.10 dated September 18, 2019 from Mountain Valley, Inc.

p.   Check #4022 payable to Farm Properties in the amount of $3,900.00 dated

---

[10] Upon information and belief, Mountain Valley, Inc. is a merchant that purchases farm crops from farmers for resale.

18

September 23, 2019 from Mountain Valley, Inc.

q.   Check #4029 payable to Farm Properties in the amount of $9,684.80 dated September 23, 2019 from Mountain Valley, Inc.

r.   Check #48747 payable to Farm Properties in the amount of $9,562.50 dated October 4, 2019 from Kaleck Brothers, Inc.

s.   Check #81521 payable to Contrel Brown & Sons and Farm Properties in the amount of $56,993.11 dated October 4, 2019 from Associated Grain.

t.   Check #4056 payable to Farm Properties in the amount of $4,566.40 dated October 1, 2019 from Mountain Valley.

u.   Check #81619 payable to Contrel Brown and Son Farm and Farm Properties in the amount of $68,931.54 dated October 24, 2019 from Associated Grain.

v.   Check #81672 payable to Contrel Brown and Son and Farm Properties in the amount of $6,138.98 dated November 4, 2019 from Associated Grain.

65.   Copies of the checks reflecting the Farm Properties Deposits are attached hereto collectively as **Exhibit M**.

66.   Copies of some of the documents relating to the issuance of the checks reflecting the Farm Properties Deposits are attached hereto collectively as **Exhibit N.**

67.   Upon information and belief, on December 5, 2018, $765,013.00 (the "December Crop Insurance Proceeds") was deposited into the Farm Properties bank account with the notation "RURAL COMMUNITY/LOSS PYMTS BENNY AND KAREN HALL."   Farm Properties' QuickBooks records show the following transfers were made from the December Crop Insurance Proceeds: (i) $22,995.00 to Benny F. Hall & Sons, LLC; (ii) $217,000.00 to Benny F. Hall & Sons Produce; (iii) $150,000.00 to Benny F. Hall & Sons, LLC; (iv) $22,995.00 to Benny F. Hall &

Sons, LLC; (v) $250,000.00 to Benny F. Hall & Sons, LLC; and (vi) $40,000.00 to Benny F. Hall & Sons, LLC.  However, the bank statement for Farm Properties shows the transfers of the December Crop Insurance Proceeds referenced in the QuickBooks records were not made to Benny F. Hall & Sons, LLC but instead reflect the following transfers following the deposit of the December Crop Insurance Proceeds: (i) $250,000.00 to the account in the name of Benny Hall and Karen Hall rather than the account for Benny F. Hall & Sons; (ii) $217,000.00 to the account in the name of Benny F. Hall & Sons Produce; (iii) $150,000.00 to the account in the name of Benny Hall and Karen Hall rather than the account for Benny F. Hall & Sons; and (iv) $40,000.00 to the account in the name of Benny Hall and Karen Hall rather than the account for Benny F. Hall & Sons.  Based upon the transfers noted in the Farm Properties' QuickBooks records, $62,023.00 of the December Crop Insurance Proceeds were retained by Farm Properties.

68.     Upon information and belief, on January 2, 2019, $43,554.00 ("January Crop Insurance Proceeds" and together with the December Crop Insurance Proceeds the "Crop Insurance Proceeds") was deposited into the Farm Properties bank account with the notation "RURAL COMMUNITY/LOSS PYMTS BENNY AND KAREN HALL."

69.     Upon information and belief and based in part on the testimony at the Hearing by Benny Hall that Benny Hall & Sons was the entity under which farming operations were conducted, the Crop Insurance Proceeds which were deposited in the bank account for Farm Properties relate to the farming operations or crops grown by Benny F. Hall and Sons and were subject to the lien of Nutrien.

70.     There may be additional transfers of Benny F. Hall & Sons or Benny Hall property to Holden's Creek, Farm Properties, the Hall Entities and/or their insiders or affiliates which may be discovered.

71.     The following transactions (collectively, the "Benny F. Hall & Sons Deposits") are examples of checks made payable to Benny F. Hall & Sons or Benny Hall that were transferred to Farm Properties and deposited into a bank account in the name of Farm Properties. Upon information and belief, the Benny F. Hall & Sons Deposits reflect property of Benny F. Hall & Sons or Benny Hall which was subject to the lien of Nutrien:

a.  Check #050858 payable to Benny F. Hall & Sons in the amount of $1,225.00 dated July 8, 2019.

b.  Check #530 payable to Benny F. Hall & Sons in the amount of $750.00 dated July 8, 2019.

c.  Check #9930 payable to Benny Hall in the amount of $700.00 dated July 10, 2019.

d.  Check #9740 payable to Benny Hall & Sons in the amount of $675.00 dated July 18, 2019.

e.  Check #21588 payable to Benny Hall Clam Shells in the amount of $650.00 dated July 22, 2019.

f.  Check #1714 payable to Benny Hall & Sons in the amount of $400.00 dated July 24, 2019.

g.  Check #3842 payable to Benny F. Hall & Sons in the amount of $2,250.00 dated July 24, 2019.

h.  Check #2063 payable to Benny Hall & Sons in the amount of $650.00 dated July 24, 2019.

i.  Check #1977 payable to Benny F. Hall & Sons in the amount of $800.00 dated July 22, 2019.

j.   Check #3060 payable to Benny F. Hall & Sons in the amount of $800.00 dated July 26, 2019.

k.   Check #2064 payable to Benny Hall & Sons in the amount of $650.00 dated July 29, 2019.

l.   Check #11197 payable to Benny F. Hall & Sons in the amount of $845.00 dated July 25, 2019.

m.   Check #1628 payable to Benny Hall & Son in the amount of $2,200.00 dated July 30, 2019.

n.   Check #2282 payable to Benny Hall & Sons in the amount of $350.00 dated August 1, 2019.

o.   Check #3120 payable to Benny Hall in the amount of $950.00 dated August 14, 2019.

p.   Check #130 payable to Benny Hall in the amount of $900.00 dated August 10, 2019.

q.   Check #131 payable to Benny Hall in the amount of $450.00 dated August 12, 2019.

r.   Check #1199 payable to Benny Hall & Sons in the amount of $450.00 dated August 12, 2019.

s.   Check #9855 payable to Benny F. Hall & Sons in the amount of $2,325.00 dated August 21, 2019.

t.   Check #312 payable to Benny F. Hall & Sons in the amount of $450.00 dated August 19, 2019.

u.   Check #11548 payable to Benny F. Hall & Sons in the amount of $845.00

dated August 29, 2019.

v.   Check #860 payable to Benny Hall & Sons in the amount of $675.00 dated September 4, 2019.

w.   Check #2094 payable to Benny Hall & Sons in the amount of $1,650.00 dated September 4, 2019.

x.   Check #1505 payable to Benny F. Hall & Sons in the amount of $925.00 dated October 10, 2019.

y.   Check #1400 payable to Benny Hall in the amount of $400.00 dated October 17, 2019.

z.   Check #13955 payable to Benny Hall & Sons in the amount of $500.00 dated October 21, 2019.

aa.   Check #1208 payable to Benny Hall & Sons in the amount of $30.00 dated October 31, 2019.

72.   Copies of the checks evidencing the Benny F. Hall & Sons Deposits are attached hereto collectively as **Exhibit O**.

73.   Based on notations on the checks, many of the Benny F. Hall & Sons Deposits were for the payment of the sale and delivery of clam shells.

74.   According to Benny Hall and Karen Hall's 2014, 2015 and 2016 tax returns (the "Pre-Virginia Complaint Tax Returns"), the businesses engaged in by Benny Hall, include but are not limited, to the following:

a.   Farming as a sole proprietor, and through partnerships and limited liability companies;

b.   Selling and delivering clam and/or oyster shells as a sole proprietor,

including in the name of Benny Hall;

    c.   Selling produce as a sole proprietor, including in the name of Benny F. Hall & Sons Produce; and

    d.   Transporting goods through Trucking.

75.    According to testimony from the Hearing by Benny Hall, all farming operations since 2013 were conducted in the name of Benny F. Hall & Sons and Benny Hall is the owner of Benny F. Hall & Sons.

76.    Based upon testimony at the Hearing by Benny Hall, Farm Properties owns certain farm equipment and real property. The 2015 tax return for Benny Hall and Karen Hall does not reflect any income for Farm Properties. The 2016 tax return for Benny Hall and Karen Hall shows the only potential income from Farm Properties to be a small amount of rental income. As of the filing of the Amended Complaint, Nutrien had not been provided tax returns for Benny Hall and Karen Hall more recent than the 2016 tax return.

77.    Following the filing of the 2020 Complaint, Farm Properties filed UCC Financing Statements (the "Contrel Brown Financing Statements") in the Clerk's Office of the Virginia State Corporation Commission and in the land records of the Circuit Court for Accomack County, Virginia, naming as debtors, Brown Blessings Farm LLC and Contrel Brown and Son Farm. Copies of the Contrel Brown Financing Statements are attached hereto collectively as **Exhibit P**.

78.    Pursuant to the Contrel Brown Financing Statements, Farm Properties asserts an "Agricultural Lien" as security "for payment of an obligation by Debtors for rents on real property leased, or subleased, to Debtors by Secured Party in connection with Debtors' farming operations" in 2019 and 2020 and rent for certain personal property leased to Debtors in 2019 and 2020.

79.    At the Hearing, Benny Hall could not recall all the individuals or entities from

whom Benny F. Hall & Sons rented farmland from in 2018. However, Benny Hall testified at the Hearing that Benny F. Hall & Sons rented land from the following individuals that are also listed on the Contrel Brown Financing Statements: (a) June Sterling; (b) Tom Dix; (c) Bill Hall; (d) Lou Bloxom; (e) Jack Tatem; (f) Donnie Jones; and (g) Wayne Mears. Benny Hall also testified at the Hearing that Benny F. Hall & Sons farmed on property owned by Farm Properties which is also listed on the Contrel Brown Financing Statements.

80.     Despite the information contained in the Contrel Brown Financing Statements asserting a lien in favor of Farm Properties for obligations of Contrel Brown & Son Farm and Brown Blessings Farm, LLC, the QuickBooks records for Farm Properties do not reflect a receivable or amount due from Brown Blessings Farm, LLC or Contrel Brown and Son Farm. The QuickBooks records for Farm Properties do show a receivable in the amount of $3,000.00 from Contrel Brown in 2020 and a receivable in the amount of $3,000.00 from Contrel Brown in 2021.

81.     Based upon testimony at the Hearing by Benny Hall, Spuddog's only activity is owning real property located in Accomack County, Virginia. The 2016 through 2019 tax returns for Benny Hall and Karen Hall do not reflect any income for Spuddog.

82.     According to the testimony at the Hearing by Benny Hall: (a) Benny F. Hall & Sons stopped farming operations following calendar year 2018; (b) Contrel Brown, individually or through an entity he owned or controlled entered into a contract (the "Brown Purchase Contract") to purchase certain property from some of the various defendants, but as of the date of the Hearing had not closed on the Brown Purchase Contract and, upon information and belief, as of the filing of this Complaint, still has not closed on the Brown Purchase Contract; (c) in 2019 Contrel Brown, individually or through an entity he owned or controlled, has conducted the same farming operations on the same property that Benny F. Hall & Sons formerly conducted farming operations

25

using some of the same equipment used by and owned by Benny F. Hall & Sons, Benny Hall and Farm Properties. At the Hearing, Benny Hall testified that there was no rental agreement or promise of payment by Contrel Brown or his entity that he owned or controlled for the use of the land and equipment in the event that the Brown Purchase Contract did not close.

83.    In connection with the litigation in the Virginia Court, the Hall Entities have provided to Nutrien QuickBooks information for only Farm Properties and Holden's Creek. The transfers among the Hall Entities noted in the QuickBooks information provided are significant and are noted only as being on the due from/due to account and cannot be fully reconciled without additional information. For example:

a.    The QuickBooks records for Farm Properties reflect the following: (i) from 2017 to 2020 over $1,980,000.00 went through the due from/due to account between Farm Properties and Benny F. Hall & Sons; (ii) from 2018 to 2019 over $630,000.00 went through the due from/due to account between Farm Properties and Benny F. Hall Produce; (iii) from 2017 to 2020 over $152,000.00 went through the due from/due to account between Farm Properties and Holden's Creek.

b.    The QuickBooks records for Holden's Creek reflect the following: (i) from 2014 to 2020 over $330,000.00 went through the due from/due to account between Holden's Creek and Benny F. Hall & Sons; (ii) from 2017 to 2020 $58,544.42 went through the due from/due to account between Holden's Creek and Farm Properties which does not match the due to/due from account in the Farm Properties QuickBooks records.

84.    After the filing of the 2020 Complaint, tax returns (the "Post-Complaint Tax

Returns") were filed for Benny Hall; Karen Hall; and the Hall Entities, including, but not limited to the following:

> a. 2017, 2018 and 2019 individual tax returns for Benny Hall and Karen Hall, and
>
> b. 2018 and 2019 tax returns for Trucking.

85.     The Post-Complaint Tax Returns show, *inter alia*, the following changes from the Pre-Complaint Tax Returns: (i) transition of the clam shell business to Holden's Creek and Farm Properties from Benny Hall; (ii) transition of crop sale revenue to Farm Properties from Benny Hall and Benny F. Hall & Sons; (iii) incurring of expenses for fertilizer, lime and chemicals by Holdens Creek, rather than by the farming operations or H&M Potato Farms; and (iv) Farm Properties shows gross sales and receipts as income in 2017 and 2018, but shows no costs of sale related to the gross sales and receipts.

86.     Farm Properties' bank statements show Farm Properties using its funds to make the following payments for what appears to be the benefit of Benny F. Hall & Sons, the other Hall Entities or their insiders and affiliates:

> a. From 6/26/2018 until 3/27/2019 -- Thirty-Four (34) Preauthorized debits in the amount of $7,825.14 each for "ACH Debit Capital Equipment/ACH Benny F. Hall & Sons LLC" for a total amount of $266,054.76
>
> b. 1/11/2019 -- $14,261.23 for "IPFS866-412-2560/IPFSPMTMDB BENNY F. HALL & SONS,"
>
> c. 7/15/2019 -- $3,380.00 for "Windsor-Mount Jo/debit Benny F Hall Sons LL"
>
> d. 7/18/2019 -- $1,955.29 for "PROG GULF/INS PREM Benny Hall"

e.  8/7/2019 -- $2,371.98 for "A&N Electric Coo/WEB PMTS BENNY HALL"

f.  9/12/2019 -- $2,039.00 for "Windsor-Mount Jo/debit Benny F Hall Sons LL"

g.  10/16/2019 -- $12,631.14 FOR "FIRST INSURANCE/INSURANCE Benny F. Hall Sr and Ka"

h.  11/4/2019 -- $1,911.62 for "A&N Electric Coo/WEB PMTS BENNY HALL"

i.  1/13/2020 -- $12,631.14 for "FIRST INSURANCE/INSURANCE Benny F. Hall Sr and Ka"

j.  1/14/2020 -- $1,309.12 for "PROG GULF/INS PREM Benny Hall"

k.  From 7/5/19 to 11/12/2020 -- Seven (7) Payments for "ADT SECURITY SER/ADTPAPACH BENNY HALL & SONS LLC"

l.  2020 -- Monthly recurring payments of $729.28 to JP Morgan Chase on behalf of "Benny F. Hall & Sons LL"

m.  From 3/2/2020 to 12/2/2020 -- Nine (9) Payments for "STATE AUTO COS./E-PAY BENNY HALL & SONS INC

n.  4/30/2020 -- $5,440.20 FOR "FIRST INSURANCE/INSURANCE Benny F. Hall Sr and Ka"

o.  7/17/2020 -- $1,420.04 for "PROG GULF/INS PREM Benny Hall"

p.  7/29/2020 -- $1,490.57 for "IPFS866-412-2560/IPFSPMTMDB BENNY F. HALL & SONS,"

q.  7/30/2020 -- $2,641.54 for "ANTHEM BLUE I160/CORP PYMT BENNY

F HALL SONS LL"

r.  9/9/2020 -- $2,019.00 for "Windsor-Mount Jo/debit Benny F Hall Sons LL"

s.  9/15/2020 -- $2,031.95 for "A&N Electric Coo/WEB PMTS BENNY HALL"

t.  9/16/2020 -- $103.00 for "Landmark Ins & F/Payment Karen Hall"

u.  9/23/2020 -- $1,575.10 for "IPFS866-412-2560/IPFSPMTMDB BENNY F. HALL & SONS,"

v.  9/20/2020 -- $2,275.80 for "ANTHEM BLUE I160/CORP PYMT BENNY F HALL SONS LL"

w.  10/23/2020 -- $1,490.57 for "IPFS866-412-2560/IPFSPMTMDB BENNY F. HALL & SONS,"

x.  10/30/2020 -- $2,275.80 for "ANTHEM BLUE I160/CORP PYMT BENNY F HALL SONS LL"

y.  12/1/2020 -- $2,275.80 for "ANTHEM BLUE I160/CORP PYMT BENNY F HALL SONS LL"

z.  12/3/2020 -- $1,565.10 for "IPFS866-412-2560/IPFSPMTMDB BENNY F. HALL & SONS,"

aa. 12/24/2020 -- $3,979.50 for "ANTHEM BLUE I160/CORP PYMT BENNY F HALL SONS LL"

bb. In each of 2019 and 2020, Farm Properties paid $24,512.74 on the loan at Midatlantic Farm Credit for the Shay Farm that Benny Hall testified was owned by Benny Hall and Karen Hall.

87.    Additionally, the Hall Entities' bank records through November 2019 are filled

with transfers among and between the Hall Entities. For example, in July and August of 2019 alone, Farm Properties transferred a total of approximately $50,000.00 into the Holden's Creek bank account.

88.    Holden's Creek used Trucking's bank account from January 2020 until July 2020 when the 2020 Action was filed.

89.    There were common officers, directors and/or employees of Benny F. Hall and Sons, Benny Hall, Karen Hall, Farm Properties, Holden's Creek, Spuddog, Trucking and the other Hall Entities.

90.    Based upon information from counsel for the Hall Entities that have responded to the 2020 Complaint and Amended Complaint, there are no written intercompany agreements among the various Hall Entities. Additionally, the QuickBooks records for Farm Properties and Holden's Creek reflect transfers only on the due to/due from accounts with no further explanation.

91.    Pursuant to financial statements (the "Financial Statements") provided to Nutrien, Benny F. Hall & Sons owned a significant amount of land and buildings.

92.    Benny Hall also testified at the Hearing that he did not know why the Financial Statements showed that Benny F. Hall & Sons owned buildings worth approximately $4,000,000.00 and land valued at almost $2,400,000.00, stating Benny F. Hall & Sons has never owned any real estate.

93.    In October 2012, Karen Hall and Benny Hall opened a brokerage account (the "Joint Account") as joint tenants with right of survivorship.

94.    The Joint Account was not opened or held by Benny Hall and Karen Hall as tenants by the entirety.

95.    On January 24, 2019, Karen Hall opened an individual brokerage account (the

"Sole Account") in her name only.

96.     In January 2019, after opening the Sole Account, Karen Hall transferred all of the securities from the Joint Account to the Sole Account (the "Stock Transfer").

97.     Under Virginia law, Benny Hall is presumed to own one-half of the securities in the Joint Account. *See* Virginia Code Section 6.2-606(A).

98.     The Stock Transfer occurred while Nutrien was a creditor of Benny Hall and Karen Hall.

99.     The transfers referenced in this Complaint, including, but not limited to, the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Spuddog Transfer, the Stock Transfer, the Farm Properties Real Property Transfer, the transfers of the Crop Insurance Proceeds and/or the Benny F. Hall & Sons Deposits were made with the actual intent to hinder, delay and defraud creditors, including Nutrien, were done while Nutien was a creditor of Benny Hall, Karen Hall and Benny F. Hall & Sons, and resulted in either the conveyance of property of Benny F. Hall & Sons or Benny Hall to, for the benefit of or for the payment of the debts and obligations of Karen Hall, the Hall Entities and/or their insiders or affiliates or resulted in Benny F. Hall & Sons, preferring Karen Hall, the Hall Entities, and/or their insiders or affiliates rather than Nutrien and in some cases violated the lien rights of Nutrien.  The Debtors benefitted from the transfers referenced in this Complaint.

100.    Pursuant to Virginia Code Section 55.1-403:

In any action brought by a creditor pursuant to § 55.1-400, 55.1-401, or 55.1-402, where a (i) gift; (ii) deed; (iii) conveyance, assignment, or transfer of or charge upon the estate of a debtor; (iv) action commenced or judgment or execution suffered or obtained; or (v) bond or other writing is declared void, the court shall award counsel for the creditor reasonable attorney fees against the debtor. Upon a finding of fraudulent conveyance pursuant to § 55.1-400, the court may assess sanctions, including such attorney fees, against all parties over which it has jurisdiction who, with the intent to defraud and having knowledge of the judgment,

participated in the conveyance.

## Count I - Exception to Discharge for Money Obtained through Actual Fraud
## (Piercing the Corporate Veil)
## 11 U.S.C. § 523(a)(2)(A)

101.    Nutrien repleads Paragraphs 1 through 100 as if fully set forth herein.

102.    Pursuant to 11 U.S.C. § 523(a)(2)(A), "[a] discharge under section…1141… of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of a credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

103.    The term "actual fraud" as set forth in section 523(a)(2)(A) encompasses "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000); *see also In re Tankersley*, 305 B.R. 376, 379 (Bankr. M.D. Fla. 2004). "[A]ctual fraud" also encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 366 (2016).

104.    Further, with respect to the "obtained by" requirement found in section 523(a)(2)(A), it has been recognized that the "obtained by" requirement may be satisfied by a fraudulent scheme that lacks a direct misrepresentation where the debtor exhibits the requisite fraudulent intent. *Id.* at 578 U.S. at 365; *see also McClellan*, 217 at F.3d 893.

105.    The Hall Entities were formed and organized under Virginia law.

106.    Under Virginia law, a corporate entity may be disregarded, and a shareholder held personally liable, when it is shown that the shareholder has controlled or used the corporation to perpetrate fraud. *O'Hazza v. Executive Credit Corp.,* 246 Va. 111, 115 (1993) (citing *Lewis*

*Trucking Corp. v. Commonwealth*, 207 Va. 23, 31 (1996)).

107.    Reverse piercing of the corporate veil and treating affiliated companies as alter egos that are responsible for the debts and obligations of owners and the affiliated companies is also recognized under Virginia law. *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 11 (2003).

108.    The Hall Entities and/or their insiders and affiliates, including the Debtors and Benny Hall, did not operate as separate entities which conducted their own operations. Instead, the Hall Entities and/or their insiders or affiliates did not maintain corporate formalities and transferred, shared, and comingled funds and assets amongst each other and paid each other's debts in order to hinder, delay and defraud creditors, including Nutrien and its collection efforts. For example, in addition to the prior allegations, and without limitation, a review of the bank account and other records for the Hall Entities, Karen Hall and Benny Hall reflect the following:

      a.   Employees were shared amongst certain of the Hall Entities.

      b.   The QuickBooks records for Farm Properties reflect that in 2019, Farm Properties paid Benny F. Hall & Sons' employees and noted the payments on the due to/due from account for Benny F. Hall & Sons.

      c.   In 2018, Karen Hall, Benny Hall, the Hall Entities and/or their insiders and affiliates began transferring, for no consideration, or selling the crops of Benny F. Hall & Sons in the name of Holden's Creek and/or depositing the funds from the sales of Benny F. Hall & Sons' crops into the bank account of Holden's Creek.

      d.   In 2019, Karen Hall, Benny Hall, the Hall Entities and/or their insiders and affiliates began selling crops in the name of Farm Properties and/or depositing the funds from those sales into the bank account for Farm

Properties.

e.  The proceeds from the sale of clam shells were at various and different times made payable to or deposited into the bank accounts in the name of: (i) Benny F. Hall & Sons Produce; (ii) Benny and Karen Hall; (iii) Benny F. Hall & Sons; (iv) Farm Properties; (v) Trucking; and (vi) Holden's Creek.

f.  From February 2019 to March 2019, checks made payable to Holden's Creek were deposited into the bank account of Trucking.

g.  Checks payable to Farm Properties were deposited into the bank account of Holden's Creek and vice versa.

h.  Checks payable to Benny Hall and Benny F. Hall & Sons were deposited into the bank account in the name of Farm Properties.

i.  Checks payable to Benny F. Hall & Sons were deposited into the bank account in the name of Holden's Creek.

j.  Checks payable to Karen Hall and Benny Hall, individually, for rent from the United States Postal Service were at different times deposited into the bank accounts for: (i) Benny F. Hall & Sons Produce; (ii) Benny and Karen Hall; (iii) Benny F. Hall & Sons; and (iv) Farm Properties.

k.  In August 2017, $338,000.00 was transferred from the Benny F. Hall & Sons bank account into the Farm Properties bank account (the "$338,000 Transfer"). At the time of the $338,000 Transfer, Nutrien was owed in excess of $2,375,000.00 by Benny F. Hall & Sons.

l.  In July 2018, four checks from a produce dealer for the purchase of potatoes were made payable to Karen Hall, individually, and deposited into the

34

account for Benny Hall and Karen Hall although upon information and belief, Karen Hall did not conduct farming operations in her individual name.

m. From January 2020 until July 2020, Holden's Creek used Trucking's bank account.

n. On August 3, 2020, Farm Properties wired $12,000.00 to Fortis Trustee Foreclosure Service, LLC to pay a deposit for Holden's Creek related to a Memorandum of Sale entered into by Holden's Creek as purchaser of certain real property at foreclosure sale. The real property that was being foreclosed on and subject to the Memorandum of Sale was real property that had been owned by Farm Properties.

o. In July 2019, Farm Properties paid $8,000.00 in funeral expenses.

p. Despite the Testimony of Benny Hall at the Hearing in August 2019 that the farming operations were only done in the name of Benny F. Hall & Sons, Farm Properties records show potato sales in excess of $205,000.00 in 2019.

q. On or about November 27, 2019, Farm Properties paid $24,512.74 to Midatlantic Farm Credit and, on or about December 23, 2020, Farm Properties paid $24,512.74 to Midatlantic Farm Credit. The check for the December 23, 2020 payment noted it was for the "Shay Farm Payment." At the Hearing, Benny Hall testified that "Shay Farm" did not belong to Farm Properties but instead was owned by Benny Hall and Karen Hall and financed by Farm Credit. Karen Hall has also scheduled the Shay Farm in this matter as owned by Benny Hall and Karen Hall.

r.  On January 10, 2020, $15,828.75 was deposited in the bank account for Trucking and on January 21, 2020 $7,386.75 was deposited in the bank account for Trucking. Both the deposits had the notation "DOI TREAS 310/MISC PAY . . . BENNY F. HALL & SONS". According to the Farm Properties' QuickBooks records and the account records, these amounts were immediately transferred to Farm Properties and booked as clam shell revenue.

109.  The filings in these bankruptcy cases and testimony at the 341 Meeting of Creditors by the Debtors represent the following:

a.  Spuddog has an oral lease with Karen Hall for the lease of real property.

b.  Spuddog never had a bank account prior to the filing of its bankruptcy.

c.  Spuddog disclosed its gross revenue for January 2020 until the filing of its bankruptcy as unknown and that Spuddog was unable to determine its gross income at the time of the disclosure.

d.  Farm Properties paid $11,738.00 for Spuddog to file bankruptcy.

e.  Karen Hall signed a Settlement Agreement dated January 17, 2019 on behalf of Benny F. Hall & Sons, LLC.

f.  Karen Hall has an oral lease for the lease of real property in Florida owned by Farm Properties.

g.  Karen Hall's Statement of Financial Affairs identifies the following in wages, commissions, bonuses or tips: (i) $149.00 for January 1, 2022 until the date of filing on July 1, 2022; (ii) $281.65 for January 1, 2021 to December 31, 2021; and (iii) $0.00 for January 1, 2020 to December 31,

2020. However, Karen Hall's cash collateral budgets reflect that she receives $900/month from Farm Properties in connection with providing administrative and bookkeeping services to Farm Properties.

h.  The Debtors' cash collateral budgets reflect that both Karen Hall and Spuddog receive "assistance" from "affiliate" Farm Properties.

i.  Spuddog's cash collateral budget reflects that Spuddog "leases the farm to its affiliate Farm Properties, LLC who then subleases to Contrel Brown. The Debtor receives payment when crops are harvested in December."

j.  Despite testimony from Karen Hall at the 341 Meeting of Creditors that Farm Properties owns the home in which she lives and the cash collateral budget showing that Karen Hall pays $1,200 per month in rent to Farm Properties, Karen Hall's Periodic Report Regarding Value, Operations and Profitability of Entities in which the Estate of Karen W. Hall Holds a Substantial and Controlling Interest shows the following as to Farm Properties: (i) Farm Properties had balances of $-560.22 and $-612.64 in Farm Properties' bank accounts as of June 30, 2022; (ii) no real property is listed as owned by Farm Properties on Farm Properties' Balance Sheets although Farm Properties actually owns at least the real property in Florida in which Karen Hall lives. Additionally, online land records for Accomack County, Virginia reflect that Farm Properties owns real property in Virginia; and (iii) From January 2022 until June 2022, Farm Properties had no rental income.

110.  Further, as alleged herein, the transfers referenced in this Complaint, including but

not limited to, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Stock Transfer, the Farm Properties Real Property Transfer, the $338,000.00 Transfer, and the transfers of the Crop Insurance Proceeds are fraudulent conveyances and all carry badges of fraud exhibiting Karen Hall and/or the Hall Entities intent to defraud Nutrien. Those badges of fraud include, *inter alia*: (1) retention of an interest in the transferred property by the transferor; (2) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (3) lack of or gross inadequacy of consideration for the conveyance; (4) close relationship of the parties; and (5) retention or possession of the property by the transferor.

111.    The Hall Entities, Karen Hall, Benny Hall and/or their insiders or affiliates were in reality just the alter ego, alias, stooge or dummy of the Debtors.

112.    The Hall Entities, Karen Hall, Benny Hall and/or their insiders or affiliates did not properly maintain business records or written agreements.

113.    The funds and credit obtained by Benny F. Hall & Sons and Benny Hall from Nutrien were to be used for farming operations that were to produce income for Benny F. Hall & Sons and Benny Hall.

114.    The Debtors, through artifice, trickery, and deceit, used the funds and credit obtained by Benny F. Hall & Sons and Benny Hall for personal enrichment and to pay the obligations of the other Hall Entities that were under the Debtor's control.

115.    As shown by the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Farm Properties Real Property Transfer, the Stock Transfer and the transfers of the Crop Insurance Proceeds, and the actions alleged in this Complaint, Karen Hall and the Hall Entities siphoned assets of Benny F.

Hall & Sons and Benny Hall, including collateral on which Nutrien holds a valid lien, into their personal pockets, either directly or as owner of the Hall Entities or related entities under control of the owners of the Hall Entities and conferring a benefit on the Debtors.

116.    Upon information and belief, Karen Hall, Benny Hall and the Hall Entities, used Benny F. Hall & Sons, Benny Hall and their income to pay for the obligations of the Debtors and the other Hall Entities and/or their insiders or affiliates rather than paying Nutrien as a creditor and lienholder of Benny F. Hall & Sons and Benny Hall.

117.    Benny F. Hall & Sons, Benny Hall and Karen Hall have evaded their obligations to pay their creditor, Nutrien, due to the actions alleged herein, including the transfers referenced in this Complaint and the Spuddog Transfer conducted, by or on behalf of the Debtors and the other Hall Entities and/or their insiders or affiliates, rather than to Nutrien as a creditor of Benny F. Hall & Sons, Benny Hall and Karen Hall.

118.    As a result, the Debtors used the various Hall Entities as a sham and fraudulent scheme to perpetuate a fraud on Nutrien as a creditor and for which the Debtors benefitted.  The Debtors had actual knowledge that the scheme would cause harm to Nutrien.

119.    It would operate as an injustice to Nutrien to recognize the individual corporate existences of the Hall Entities, Karen Hall, and Benny Hall and/or their insiders or affiliates. As a result, Karen Hall, Spuddog, Benny Hall and the other Hall Entities should be jointly and severally liable for all obligations of Benny F. Hall & Sons and Benny Hall to Nutrien.

WHEREFORE, Nutrien seeks a judgment finding that the Debtors are jointly and severally liable, with Benny Hall and the other Hall Entities, for all obligations of Benny F. Hall & Sons and Benny Hall owed to Nutrien, plus Nutrien's attorneys' fees incurred, and those obligations plus attorneys' fees incurred by Nutrien should be excepted from discharge pursuant to 11 U.S.C.

§523(a)(2)(A), as a debt incurred by actual fraud.

### COUNT II – Exception to Discharge for Money Obtained through Actual Fraud (Debtors' Liability for Fraudulent Transfers) 11 U.S.C. § 523(a)(2)(A)

120.    Nutrien repleads Paragraphs 1 through 119 as if fully set forth herein.

121.    To the extent that the Debtors or the Debtors' affiliates or alter egos received any proceeds or property resulting from the actions alleged herein, including the transfers outlined in this Complaint and through the Debtors' actions to defraud, deceive, and thwart Nutrien's collection attempts, any debt or deficiency in payment resulting from the Debtors' failure to account for, and misappropriation of, the proceeds is a nondischargeable debt of the Debtors under 11 U.S.C. § 523(a)(2)(A).

122.    The Debtors or the Debtors' alter egos were the recipient of fraudulent conveyances as part of a scheme to defraud Nutrien.

123.    Pursuant to Virginia Code Section 55.1-400, "[e]very (i) gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, (ii) action commenced or order, judgment, or execution suffered or obtained, and (iii) bond or other writing given with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers, or other persons or their representatives or assigns, be void."

124.    The transfers, conveyances, and payments referenced in this Complaint (and other conveyances, transfers, or payments that may be proven at trial) that were made to or on behalf of or for the benefit of the Debtors, the Hall Entities and/or their insiders or affiliates, including the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Stock Transfer, the Farm Properties Real Property Transfer

and the transfers of the Crop Insurance Proceeds were made with the actual intent to defraud

creditors of the Debtors, Benny F. Hall & Sons and/or Benny Hall, including Nutrien.

125.    A prima facie case of fraudulent conveyance under Virginia Code Section 55.1-400

is established by demonstrating one or more of the following badges of fraud:  (1) retention of an

interest in the transferred property by the transferor; (2) transfer between family members for

allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the

time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5)

retention or possession of the property by the transferor; and (6) fraudulent incurrence of

indebtedness after the conveyance.  *In re Porter*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984) and *Fox

Rest Assoc., L.P. v. Little*, 282 Va. 277, 284-285 (2011)**.** In addition, close relationship of the

parties and insolvency of the grantor are badges of fraud. *See Bartl v. Garfinkel*, 30 B.R. 199, 212

(Bankr. E.D. Va. 1983).

126.    Further, the fraudulent intent of a transfer can be established based upon the

husband-and-wife relationship. *In re Porter*, 37 B.R. 56, 64 (Bankr. E.D. Va. 1984) ("Often parties

to a suspicious transaction are charged with the intent of the transferors because of the relationship

between the parties." (citations omitted)); *Fox Rest Assoc., L.P.* at 285 ("transactions between

husband and wife must be <u>closely scrutinized</u>, to see that they are fair and honest and not mere

contrivances resorted to for the purpose of placing the husband's property beyond the reach of his

creditors'" (quoting *Fowlkes v. Tucker*, 164 Va. 507, 511 (1935)) (emphasis added in *Fox Rest

Assoc., L.P.*)).

127.    Pursuant to Virginia law, "[o]nce a party has introduced evidence to establish a

badge of fraud, a prima facie case of fraudulent conveyance is established. *Temple v. Jones, Son

& Co.*, 179 Va. 286, 298, 19 S.E.2d 57, 62 (1942). Once this is done, 'the burden shifts, and the

defendant must establish the bona fides of the transaction.' *First National Bank of Bluefield v. Pressley*, 176 Va. 25, 28, 10 S.E.2d 526, 527 (1940)." *Fox Rest Associates, L.P.*, 282 Va. at 285.

128.    Badges of fraud exist with respect to the Holden Crop Deposits including, but not limited to: (1) pursuit of the transferor by a creditor at the time of the transfer; (2) lack of or gross inadequacy of consideration for the transfer; (3) retention of possession of the property; (4) close relationship of the parties; and (5) insolvency of the transferor.

129.    Badges of fraud exist with respect to the Farm Properties Deposits including, but not limited to: (1) retention of an interest in the transferred property; (2) pursuit of the transferor by a creditor at the time of the transfer; (3) lack of or gross inadequacy of consideration for the transfer; (4) retention of possession of the property; (5) close relationship of the parties; and (6) insolvency of the transferor.

130.    Badges of fraud exist with respect to the Benny F. Hall & Sons Deposits including, but not limited to: (1) retention of an interest in the transferred property; (2) pursuit of the transferor by a creditor at the time of the transfer; (3) lack of or gross inadequacy of consideration for the transfer; (4) retention of possession of the property; (5) close relationship of the parties; and (6) insolvency of the transferor.

131.    Badges of fraud exist with respect to the Spuddog Transfer including, but not limited to: (1) retention of an interest in the transferred property; (2) lack of or gross inadequacy of consideration for the transfer; (3) retention of possession of the property; (4) close relationship of the parties; and (5) insolvency of the transferor.

132.    Badges of fraud exist with respect to the Farm Properties Real Property Transfer, including but not limited to: (1) retention of an interest in the transferred property; (2) lack of or gross inadequacy of consideration for the transfer; (3) retention of possession of the property; (4)

close relationship of the parties; and (5) insolvency of the transferor.

133.    Badges of fraud exist with respect to the Stock Transfer including, but not limited to: (1) pursuit of the transferor by a creditor at the time of the transfer; (2) lack of or gross inadequacy of consideration for the transfer; (3) close relationship of the parties; and (4) insolvency of the transferor.

134.    Badges of fraud exist with respect to the $338,000.00 Transfer including, but not limited to: (1) retention of an interest in the transferred property; (2) pursuit of the transferor by a creditor at the time of the transfer; (3) lack of or gross inadequacy of consideration for the transfer; (4) close relationship of the parties; (5) retention of possession of the property; and (6) insolvency of the transferor.

135.    Badges of fraud exist with respect to the transfers of the Crop Insurance Proceeds including, but not limited to: (1) retention of an interest in the transferred property; (2) pursuit of the transferor by a creditor at the time of the transfer; (3) lack of or gross inadequacy of consideration for the transfer; (4) close relationship of the parties; (5) retention of possession of the property; and (6) insolvency of the transferor.

136.    The Holden Crop Deposits, Farm Properties Deposits, Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Farm Properties Real Property Transfer, the Stock Transfer, and the transfers of Crop Insurance Proceeds are fraudulent conveyances under Virginia law, including Virginia Code Section 55.1-400.

137.    To the extent that discovery or the evidence shows any other transfers that were fraudulent pursuant to Virginia law, including Virginia Code Section 55.1-400, Nutrien requests that the Court determine that the debts owed as a result of any additional fraudulent transfers be excepted from discharge.

138.     The conveyances, transfers, and payments referenced in this Complaint (and other conveyances, transfers, or payments that may be proven at trial) that were made to or on behalf of or for the benefit of the Debtors and the Hall Entities and/or their insiders or affiliates, including the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Farm Properties Real Property Transfer, the Stock Transfer, the $338,000.00 Transfer, and the transfers of the Crop Insurance Proceeds were fraudulent *per se*, including because the transfers were done while Benny F. Hall & Sons, Benny Hall and/or Karen Hall were insolvent and were to or for the benefit of a family member, affiliate and/or those in complete control of Benny F. Hall & Sons.

139.     The Debtors and the other Hall Entities and/or their insiders or affiliates had actual and/or constructive notice of the fraudulent intent and the damages from the fraud rendering any debt owed by the Debtors to Nutrien incurred as a result of the transfers referenced in this Complaint (and other conveyances, transfers, or payments that may be proven at trial) nondischargeable pursuant to 11 U.S.C. 523(a)(2)(A) due to the actual fraud perpetrated by the Debtors.

WHEREFORE, Nutrien respectfully requests the Court enter a judgment that the Debtors debt to Nutrien plus attorneys' fees incurred by Nutrien and any sanctions under Virginia Code Section 55.1-403 as a result of the fraudulent conveyances alleged in this Complaint, in an amount to be determined at trial, are nondischargeable pursuant to 1 U.S.C. §523(a)(2)(A), as a debt incurred by actual fraud.

## COUNT III – Exception to Discharge for Fraud or Defalcation as a Fiduciary
### (Debtor's Liability for Breach of Fiduciary Duty)
### 11 U.S.C. § 523(a)(4)

140.     Nutrien repleads paragraphs 1 through 139 as if fully set forth herein.

141.    Pursuant to 11 U.S.C. § 523(a)(4), "[a] discharge under section…1141… of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

142.    Benny F. Hall & Sons is a limited liability company organized under the laws of the Commonwealth of Virginia.  Therefore the controlling state law for what qualifies as a "technical trust" with respect to Benny F. Hall & Sons are the laws of the Commonwealth of Virginia.

143.    Under Virginia law, once a corporation or limited liability company enters the zone of insolvency, the fiduciary duties owed by directors and managers extend to creditors. *In re James River Coal Co.*, 360 B.R. 139 (Bankr. E.D. Va. 2007); *Patel v. Anjali*, 81 Va. Cir. 264 (Chesapeake Cir. Ct. 2010).

144.    Upon information and belief, during all relevant times in this Complaint, prior to and as of May 7, 2018, Benny F. Hall & Sons and Benny Hall were insolvent and remain insolvent as of the filing of this Complaint.

145.    Once Benny F. Hall & Sons entered the zone of insolvency, its managers and those in control of managing the businesses owed a fiduciary duty to conserve assets for the benefit of creditors such as Nutrien.

146.    Despite being within the zone of insolvency, bank records and other evidence indicate that Benny F. Hall & Sons, through its manager and/or those in control engaged in the transfers referenced in this Complaint which included acts of self-dealing, including the transfer of assets of Benny F. Hall & Sons, or their proceeds, to Farm Properties, Holden's Creek, and/or the other Hall Entities, their insiders, owners or affiliates, all of which transfers benefitted the manager, Karen Hall.

147.    Upon information and belief, Karen Hall was, and exercised powers of, the manager of Benny F. Hall & Sons as of May 2018, and as a result breached her fiduciary duty through the transfers referenced in this Complaint by her failure to preserve the assets of Benny F. Hall & Sons for the benefit of creditors of Benny F. Hall & Sons, including Nutrien.

148.    Pursuant to Virginia code section 13.1-1049, upon the winding up of a limited liability company, the assets of the limited liability company shall be distributed to creditors in satisfaction of liabilities of the limited liability company.

149.    According to statements made by Karen Hall at the meeting of creditors, at least some of the transfers referenced in this Complaint took place while Benny F. Hall & Sons was winding down its business.

150.    The debt owed to Nutrien by Karen Hall, as a result of breaching her fiduciary duty to Nutrien, constitutes a debt arising from defalcation while acting in a fiduciary capacity and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt to Nutrien plus attorneys' fees incurred by Nutrien as a result of her breach of fiduciary duty, in an amount to be determined at trial, are nondischargeable pursuant to 11 U.S.C. § 523(a)(4), as a debt incurred by fraud or defalcation in a fiduciary capacity.

### Count IV – Exception to Discharge for Larceny
### (Karen Hall's Liability for Larceny)
### 11 U.S.C. § 523(a)(4)

151.    Nutrien repleads Paragraphs 1 through 150 as if fully set forth herein.

152.    Pursuant to 11 U.S.C. § 523(a)(4), "[a] discharge under section…1141… of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

153.    "Larceny is the fraudulent taking and carrying away of the property of another with intent to convert such property to his use without the consent of another." *Ford v. Pupello (In re Pupello)*, 281 B.R. 763, 768 (Bankr. M.D. Fla. 2002).

154.    As alleged above, once Benny F. Hall & Sons became insolvent, its managers and those in control of managing the businesses owed a fiduciary duty to hold the company's assets for the benefit of creditors such as Nutrien.

155.    Upon information and belief, during all relevant times in this Complaint, prior to and as of May 7, 2018, Benny F. Hall & Sons was insolvent and remains insolvent as of the filing of this Complaint.

156.    As alleged above, pursuant to Virginia code section 13.1-1049, upon the winding up of Benny F. Hall & Sons, Benny F. Hall & Sons' assets were to be distributed to creditors, including Nutrien, in satisfaction of Benny F. Hall & Sons' liabilities.

157.    According to statements made by Karen Hall at the meeting of creditors, at least some of the transfers referenced in this Complaint took place while Benny F. Hall & Sons was winding down its business.

158.    Pursuant to the Partial Final Judgment, the Virginia Court ordered, among other things, that as of May 24, 2019, (1) Nutrien was granted immediate possession of the Benny Hall Collateral and the Benny F. Hall & Sons Collateral; (2) Benny Hall and Benny F. Hall & Sons were compelled to assemble the Benny Hall Collateral and Benny F. Hall & Sons Collateral for Nutrien for inspection and inventory; and (3) any proceeds from the lease or sale of the Benny Hall Collateral or Benny F. Hall & Sons Collateral are to be held in trust in favor of Nutrien.

159.    Pursuant to Virginia law and the Partial Final Judgment, Benny Hall and Benny F. Hall & Sons held the Benny Hall Collateral and Benny F. Hall & Sons Collateral in trust for

Nutrien's benefit, and Nutrien was entitled to the Benny Hall Collateral and Benny F. Hall & Sons Collateral and any proceeds from it.

160.    Upon information and belief, Karen Hall was, and exercised powers of, the manager of Benny F. Hall & Sons as of May 2018, and, through the transfers referenced in this Complaint, took or carried away the Benny F. Hall & Sons Collateral for her own use by transferring the property to Farm Properties, Holden's Creek, and/or the other Hall Entities, their insiders, owners or affiliates, which benefitted Karen Hall, personally.

161.    Karen Hall, individually and as a member or manager of the Hall Entities, knew of Nutrien's interest in and entitlement to the Benny F. Hall & Sons Collateral, such that any transfer thereof was done knowingly and with the intent to convert or deprive Nutrien of the same.

162.    Nutrien did not consent to any transfer of the Benny F. Hall & Sons Collateral by Karen Hall.

163.    Any transfer of the Benny F. Hall & Sons Collateral by Karen Hall was wrongful and, upon information and belief, fraudulent.

164.    To the extent that Nutrien discovers that Karen Hall transferred away any of the Benny Hall Collateral, Nutrien reserves the right to amend this Complaint to allege such transfer constituted larceny.

165.    The debt owed to Nutrien by Karen Hall, as a result of Karen Hall's larceny of collateral subject to Nutrien's lien, constitutes a debt for larceny under 11 U.S.C. § 523(a)(4).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt to Nutrien as a result of her larceny of collateral, in an amount to be determined at trial, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), as a debt for larceny.

## Count V – Exception to Discharge for Embezzlement
### (Karen Hall's Liability for Embezzlement)
### 11 U.S.C. § 523(a)(4)

166.     Nutrien repleads Paragraphs 1 through 150 as if fully set forth herein.

167.     Pursuant to 11 U.S.C. § 523(a)(4), "[a] discharge under section…1141… of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

168.     "Embezzlement is the 'fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come.'" *In re Pupello*, 281 B.R. at 767.

169.     As alleged above, once Benny F. Hall & Sons became insolvent, its managers and those in control of managing the businesses owed a fiduciary duty to hold the company's assets for the benefit of creditors such as Nutrien.

170.     Upon information and belief, during all relevant times in this Complaint, prior to and as of May 7, 2018, Benny F. Hall & Sons was insolvent and remains insolvent as of the filing of this Complaint.

171.     As alleged above, pursuant to Virginia code section 13.1-1049, upon the winding up of Benny F. Hall & Sons, Benny F. Hall & Sons' assets were to be distributed to creditors, including Nutrien, in satisfaction of Benny F. Hall & Sons' liabilities.

172.     According to statements made by Karen Hall at the meeting of creditors, at least some of the transfers referenced in this Complaint took place while Benny F. Hall & Sons was winding down its business.

173.     Pursuant to the Partial Final Judgment, the Virginia Court ordered, among other things, that as of May 24, 2019, (1) Nutrien was granted immediate possession of the Benny Hall

Collateral and the Benny F. Hall & Sons Collateral; (2) Benny Hall and Benny F. Hall & Sons were compelled to assemble the Benny Hall Collateral and Benny F. Hall & Sons Collateral for Nutrien for inspection and inventory; and (3) any proceeds from the lease or sale of the Benny Hall Collateral or Benny F. Hall & Sons Collateral are to be held in trust in favor of Nutrien.

174.    Pursuant to Virginia law and the Partial Final Judgment, Benny Hall and Benny F. Hall & Sons held the Benny Hall Collateral or Benny F. Hall & Sons Collateral in trust for Nutrien's benefit, and Nutrien was entitled to the Benny Hall Collateral and Benny F. Hall & Sons Collateral.

175.    Benny F. Hall & Sons and Karen Hall had no right to any of the Benny F. Hall & Sons Collateral or Benny Hall Collateral to which Nutrien was entitled pursuant to its liens and the operation of Virginia law or the Partial Final Judgment.

176.    Upon information and belief, Karen Hall was, and exercised powers of, the manager of Benny F. Hall & Sons as of May 2018, and, through the transfers referenced in this Complaint, appropriated the Benny F. Hall & Sons Collateral for her own benefit by transferring the property to Farm Properties, Holden's Creek, and/or the other Hall Entities, their insiders, owners or affiliates.

177.    Karen Hall, individually and as a member or manager of the Hall Entities, knew of Nutrien's interest in and entitlement to the Benny F. Hall & Sons Collateral, such that any transfer thereof was done with fraudulent intent or deceit.

178.    To the extent that Nutrien discovers that Karen Hall transferred away any of the Benny Hall Collateral, Nutrien reserves the right to amend this Complaint to allege such transfer constituted embezzlement.

179.    The debt owed to Nutrien by Karen Hall, as a result of Karen Hall's embezzlement

of collateral subject to Nutrien's lien, constitutes a debt for embezzlement under 11 U.S.C. § 523(a)(4).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt to Nutrien as a result of her embezzlement of collateral, in an amount to be determined at trial, is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), as a debt for embezzlement.

### Count VI – Exception to Discharge for Willful and Malicious Injury to Property
### (Karen Hall's Liability for Conversion)
### 11 U.S.C. § 523(a)(6)

180.    Nutrien repleads Paragraphs 1 through 150 as if fully set forth herein.

181.    Pursuant to 11 U.S.C. § 523(a)(6) "[a] discharge under section…1141… of this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity."

182.    Nutrien holds a security interest in and lien on the Benny Hall Collateral and the Benny F. Hall Collateral, which includes property that was subject to the transfers referenced in this Complaint.

183.    Under Virginia law, the tort of trover and conversion encompasses "any wrongful exercise or assumption of authority…over another's goods, depriving [them] of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305 (1994) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75 (1956)).

184.    Pursuant to Va. Code Section 8.9A-609 a secured party has the right to take possession of collateral after a default.

185.    Benny F. Hall and Sons and Benny Hall were in default to Nutrien at the time of the transfers referenced in this Complaint, and Nutrien was entitled to possession of the Benny F.

51

Hall & Sons Collateral and Benny Hall Collateral that was part of any of those transfers.

186.    At the time of the transfers referenced in this Complaint, the Debtors knew and were aware that Benny F. Hall and Sons and Benny Hall were in default to Nutrien and that Nutrien was entitled to possession of the Benny F. Hall & Sons Collateral and Benny Hall Collateral that was part of any of those transfers.

187.    Through the transfers referenced in this Complaint and by transferring assets and property out of the name of Benny Hall and/or Benny F. Hall & Sons, Karen Hall intentionally, willfully and maliciously exercised wrongful authority over the Benny F. Hall & Sons Collateral and Benny Hall Collateral that Nutrien was entitled to possess and on which Nutrien held a lien. These actions deprived Nutrien of its lien interest and rights in the property conveyed and transferred, and Karen Hall knew it would cause harm to Nutrien.

188.    The debt owed to Nutrien by Karen Hall, as a result of Karen Hall's conversion of collateral subject to Nutrien's lien, constitutes a debt for willful and malicious damage to Nutrien's property and is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt plus attorneys' fees incurred by Nutrien to Nutrien as a result of her conversion of collateral, in an amount to be determined at trial, are nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt incurred by willful and malicious damage to Nutrien's property.

**Count VII – Exception to Discharge for Willful and Malicious Injury to Property
(Karen Hall's Liability for Tortious Interference with Contract)
11 U.S.C. § 523(a)(6)**

189.    Nutrien repleads Paragraphs 1 through 150 as if fully set forth herein.

190.    Under Virginia law, the following elements constitute tortious interference with contract; (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge

of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing

or causing breach or termination of the relationship or expectancy; and (iv) resultant damage to

the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112

(1985) (citing *Calbom v. Knudtzon,* 65 Wash. 2d 157, 162-63 (1964)).

191.   Pursuant to the Benny F. Hall & Sons Security Agreement and Benny Hall Security

Agreement, Nutrien had a valid contractual relationship with Benny F. Hall & Sons and Benny

Hall.

192.   The contractual relationship between Benny F. Hall & Sons and Nutrien granted

Nutrien a business relationship and expectancy that the credit extended to Benny F. Hall & Sons

was secured by a lien on the Benny F. Hall & Sons Collateral, including crops and the proceeds

thereof.

193.   Karen Hall had actual knowledge of the contractual relationship and expectancy

between Benny F. Hall & Sons and Nutrien.

194.   The contractual relationship between Benny Hall and Nutrien granted Nutrien a

business relationship and expectancy that the credit extended to Benny Hall was secured by a lien

on the Benny Hall Collateral.

195.   Karen Hall had actual knowledge of the contractual relationship and expectancy

between Benny Hall and Nutrien.

196.   Karen Hall intentionally caused a breach of the contractual relationship and

expectancy between Benny F. Hall & Sons and Nutrien and Benny Hall and Nutrien by (i) selling

crops of Benny F. Hall & Sons which were subject to Nutrien's lien either in a different name or

having the proceeds paid to a different party, including Holden's Creek and/or Farm Properties;

(ii) transferring the crops of Benny F. Hall & Sons for no consideration; and/or (iii) depositing

funds subject to Nutrien's lien and/or payable to Benny F. Hall & Sons and/or Benny Hall into a bank account controlled by other individuals or entities, including Holden's Creek and Farm Properties.

197.    Karen Hall's actions were intentional and done with knowledge that they would harm Nutrien.  Karen Hall caused Benny F. Hall & Sons and/or Benny Hall to convey its assets, which were the subject of Nutrien's lien, and to which Nutrien was entitled to possession, to Karen Hall, Holden's Creek, Farm Properties, the other Hall Entities and/or their insiders or affiliates as part of a scheme to defraud Nutrien in violation of the contractual relationship and expectancy between Benny F. Hall & Sons and Nutrien.

198.    As a result of the breach of the contractual relationship between Benny F. Hall & Sons and Nutrien and Benny Hall and Nutrien, Nutrien has suffered damages through the loss of its collateral and its contract rights and expectancies.

199.    The debt to Nutrien owed by Karen Hall, as a result of willful and malicious damage to Nutrien's property through tortious interference with Nutrien's contracts with Benny F. Hall & Sons or Benny Hall, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt to Nutrien plus attorneys' fees incurred by Nutrien as a result of her tortious interference with Nutrien's contractual expectancy, in an amount to be determined at trial, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt incurred by willful and malicious damage to Nutrien's property.

### Count VIII – Exception to Discharge for Willful and Malicious Injury to Property
### (Karen Hall's Liability for Breach of Fiduciary Duty)
### 11 U.S.C. § 523(a)(6)

200.    Nutrien repleads Paragraphs 1 through 150 and 180 through 199 as if fully set forth

herein.

201.    Upon information and belief, Karen Hall was, and exercised powers of, the manager of Benny F. Hall & Sons as of May 2018, and breached her fiduciary duty by her failure to preserve the assets of Benny F. Hall & Sons for the benefit of creditors of Benny F. Hall & Sons, including Nutrien.

202.    Karen Hall's actions in breaching her fiduciary duty were intentional and done with knowledge that they would harm Nutrien.  Karen Hall, by breaching her fiduciary duties as the manager of Benny F. Hall & Sons, willfully and maliciously damaged the property of Nutrien by intentionally siphoning away from Benny F. Hall & Sons, the Benny F. Hall & Sons Collateral in an effort to prevent Nutrien from collecting amounts due to it.

203.    The debt to Nutrien owed by Karen Hall for breach of fiduciary duty constitutes a debt arising from willful and malicious injury to Nutrien's property and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt to Nutrien plus attorneys' fees incurred by Nutrien as a result of her breach of fiduciary duty, resulting in damages in an amount to be determined at trial, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt incurred by willful and malicious damage to Nutrien's property.

**<u>Count IX – Exception to Discharge for Willful and Malicious Injury to Property</u>**
**<u>(Karen Hall's Liability for Aiding and Abetting Breach of Fiduciary Duty, Conversions,</u>**
**<u>and Tortious Interference with Contract)</u>**
**<u>11 U.S.C. § 523(a)(6)</u>**

204.    Nutrien repleads Paragraphs 1 through 150 and 180 through 203 as if fully set forth herein.

205.    A cause of action for aiding and abetting under Virginia law may be maintained if it is alleged that (i) the defendant possessed actual knowledge of the duty or tort and (ii) the

defendant participated in the breach of the duty or the tort. *See Halifax Corp. v. Wachovia Bank*, 268 Va. 641 (2004).

206.    Karen Hall had actual knowledge of the fiduciary duty to preserve assets that Benny F. Hall & Sons owed to creditors, including Nutrien.

207.    Karen Hall was a fiduciary and had actual knowledge that conveying and transferring the Benny F. Hall & Sons assets, including the transfers stated in this Complaint, constituted a breach of the duty owed to creditors of Benny F. Hall & Sons, including Nutrien and would cause harm to Nutrien.

208.    Karen Hall directly participated in the transfers referenced in this Complaint with the knowledge that such transfers would breach Benny F. Hall & Sons' duty to creditors, including Nutrien.

209.    Karen Hall had actual knowledge of the interest of Nutrien in the Benny F. Hall & Sons Collateral and the Benny Hall Collateral.

210.    Karen Hall had actual knowledge that conveying and transferring the Benny F. Hall & Sons Collateral and the Benny Hall Collateral, including the transfers referenced in this Complaint, constituted conversion of property in which Nutrien had an interest and a right to possess and would cause harm to Nutrien.

211.    Karen Hall directly participated in the conversion of property in which Nutrien had an interest and a right to possess.

212.    Karen Hall had actual knowledge of the contractual rights and expectancy of Nutrien with Benny F. Hall & Sons and Benny Hall.

213.    Karen Hall had actual knowledge that conveying and transferring the Benny F. Hall & Sons Collateral and the Benny Hall Collateral, including the transfers referenced in this

Complaint, constituted a breach of the contractual rights and expectancy of Nutrien with Benny F. Hall & Sons and Benny Hall and would cause harm to Nutrien.

214.    Karen Hall directly participated in the breach of the contractual rights and expectancy of Nutrien with Benny F. Hall & Sons and Benny Hall.

215.    The debt owed to Nutrien by Karen Hall, as a result of Karen Hall's aiding and abetting Benny F. Hall & Sons breach of fiduciary duty, conversion, or tortious interference with contract, constitutes a debt arising from willful and malicious injury to Nutrien's property and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that Karen Hall's debt to Nutrien plus attorneys' fees incurred by Nutrien, as a result of her aiding and abetting in connection with breach of fiduciary duty, conversion, or tortious interference with contract in an amount to be determined at trial, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt incurred by willful and malicious damage to Nutrien's property.

**Count X – Exception to Discharge for Willful and Malicious Injury to Property
(Debtors' Liability for Fraudulent Conveyance)
11 U.S.C. § 523(a)(6)**

216.    Nutrien repleads Paragraphs 1 through 150 as if fully set forth herein.

217.    The debt owed to Nutrien by the Debtors, as a result of the fraudulent conveyances alleged in this Complaint, constitute a debt arising from willful and malicious injury to Nutrien's property and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that the Debtors' debt to Nutrien plus attorneys' fees incurred by Nutrien and any sanctions under Virginia Code Section 55.1-403 as a result of the fraudulent conveyances alleged in this Complaint, in an amount to be determined at trial, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt

incurred by willful and malicious damage to Nutrien's property.

## Count XI – Exception to Discharge for Willful and Malicious Injury to Property
### (Debtors' Liability for Voluntary Conveyance)
### 11 U.S.C. § 523(a)(6)

218.   Nutrien repleads Paragraphs 1 through 150 as if fully set forth herein.

219.   Pursuant to Virginia Code Section 55.1-401, "Every gift, conveyance, assignment, transfer, or charge that is not upon consideration deemed valuable in law, or that is upon consideration of marriage by an insolvent transferor or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts were contracted at the time such gift, conveyance, assignment, transfer, or charge was made."

220.   Upon information and belief, no consideration was received by Benny F. Hall & Sons or Benny Hall in connection with the Holden Crop Deposits and Benny F. Hall & Sons and Benny Hall were insolvent at the time of the Holden Crop Deposits or rendered insolvent by the Holden Crop Deposits.

221.   The Holden Crop Deposits occurred while Nutrien was a creditor of Benny F. Hall & Sons and Benny Hall.

222.   Upon information and belief, no consideration was received by Benny F. Hall & Sons or Benny Hall in connection with the Farm Properties Deposits and Benny F. Hall & Sons and Benny Hall were insolvent at the time of the Farm Properties Deposits or rendered insolvent by the Farm Properties Deposits.

223.   The Farm Properties Deposits occurred while Nutrien was a creditor of Benny F. Hall & Sons and Benny Hall.

224.   Upon information and belief, no consideration was received by Benny F. Hall & Sons or Benny Hall in connection with the Benny F. Hall & Sons Deposits and Benny F. Hall &

Sons and Benny Hall were insolvent at the time of the Benny F. Hall & Sons Deposits or rendered insolvent by the Benny F. Hall & Sons Deposits.

225.    The Benny F. Hall & Sons Deposits occurred while Nutrien was a creditor of Benny F. Hall & Sons and Benny Hall.

226.    Upon information and belief, no consideration was received by Benny F. Hall & Sons in connection with the $338,000.00 Transfer and Benny F. Hall & Sons was insolvent at the time of the $338,000.00 Transfer or rendered insolvent by the $338,000.00 Transfer.

227.    The $338,000.00 Transfer occurred while Nutrien was a creditor of Benny F. Hall & Sons.

228.    Upon information and belief, no consideration was received by Karen Hall or Benny Hall in connection with the Spuddog Transfer and Karen Hall and Benny Hall were insolvent at the time of the Spuddog Transfer or rendered insolvent by the Spuddog Transfer.

229.    The Spuddog Transfer occurred while Nutrien was a creditor of Karen Hall and Benny Hall.

230.    Upon information and belief, no consideration was received by Benny Hall in connection with the Farm Properties Real Property Transfer and Benny Hall was insolvent at the time of the Farm Properties Real Property Transfer or rendered insolvent by the Farm Properties Real Property Transfer.

231.    The Farm Properties Real Property Transfer occurred while Nutrien was a creditor of Benny Hall.

232.    Upon information and belief, no consideration was received by Benny Hall in connection with the Stock Transfer and Benny Hall was insolvent at the time of the Stock Transfer or rendered insolvent by the Stock Transfer.

233.    The Stock Transfer occurred while Nutrien was a creditor of Benny Hall.

234.    Upon information and belief, the Farm Properties Purchases were acquired in the sale from a partnership dissolution and the source of funds is unknown. To the extent that the source of the funds for the Farm Properties Purchases were funds or property of Benny F. Hall and Sons, Benny Hall and/or Karen Hall, then the funds or property transferred in connection with the Farm Properties Purchases were transferred while the transferee was insolvent, or rendered the transferee insolvent, and were not for adequate consideration at law.

235.    Upon information and belief, no consideration was received by Benny F. Hall & Sons or Benny Hall in connection with the transfers of the Crop Insurance Proceeds to Farm Properties, Benny Hall, Karen Hall and/or the other Hall Entities, their insiders or affiliates, and Benny F. Hall & Sons and Benny Hall were insolvent at the time of the transfers of the Crop Insurance Proceeds or were rendered insolvent by the transfers of the Crop Insurance Proceeds.

236.    The transfers of the Crop Insurance Proceeds occurred while Nutrien was a creditor of Benny F. Hall & Sons and Benny Hall. The conveyances, transfers, and payments referenced in this Complaint (and other conveyances, transfers, or payments that may be proven at trial), including the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Farm Properties Real Property Transfer, the Stock Transfer, the $338,000.00 Transfer, and the transfers of the Crop Insurance Proceeds that were made to or on behalf of or for the benefit of Karen Hall and/or the other Hall Entities and/or their insiders or affiliates were made at a time when Benny F. Hall and Sons, Benny Hall and/or Karen Hall were insolvent or the above referenced transfers rendered Benny F. Hall & Sons, Benny Hall and/or Karen Hall insolvent.

237.    The conveyances, transfers, and payments referenced in this Complaint (and other

conveyances, transfers, or payments that may be proven at trial), including the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Farm Properties Real Property Transfer, the Stock Transfer, the $338,000.00 Transfer, and the transfers of the Crop Insurance Proceeds that were made to or on behalf of or for the benefit of Karen Hall and/or the other Hall Entities and/or their insiders or affiliates were not made upon consideration deemed valuable at law or were made in consideration marriage.

238.    Karen Hall's actions regarding the transfers referenced in this Complaint were intentional and done with knowledge that they would harm Nutrien.  The conveyances, transfers, and payments referenced in this Complaint (and other conveyances, transfers, or payments that may be proven at trial), including the Transfers, the Holden Crop Deposits, the Farm Properties Deposits, the Benny F. Hall & Sons Deposits, the Spuddog Transfer, the Farm Properties Real Property Transfer, the Stock Transfer, the $338,000.00 Transfer, and the transfers of the Crop Insurance Proceeds that were made to or on behalf of or for the benefit of Karen Hall and/or the other Hall Entities and/or their insiders or affiliates, which were made while Nutrien was a creditor of Benny F. Hall and Sons, Benny Hall and/or Karen Hall and are voluntary conveyances pursuant to Virginia Code Section 55.1-401.

239.    The debt owed to Nutrien by the Debtors, as a result of the voluntary conveyances alleged in this Complaint, constitutes a debt arising from willful and malicious injury to Nutrien's property and is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Nutrien respectfully requests that the Court enter a judgment that the Debtors' debt to Nutrien plus attorneys' fees incurred by Nutrien and any sanctions under Virginia Code Section 55.1-403 as a result of the voluntary conveyances alleged in this Complaint, in an

amount to be determined at trial, are nondischargeable pursuant to 11 U.S.C. § 523(a)(6), as a debt incurred by willful and malicious damage to Nutrien's property.

      **WHEREFORE,** Nutrien respectfully requests the Court grant the relief and judgments requested herein and declare the Debtors' debt to Nutrien, in an amount to be determined at trial plus attorneys' fees incurred by Nutrien and any sanctions under Virginia Code Section 55.1-403 are nondischargeable pursuant to 11 U.S.C. § 523(a) and grant all other relief the Court deems just and proper.

      **RESPECTFULLY SUBMITTED,** the 11th day of October, 2022

                    **Moore Clark Duvall & Rodgers, P.C.**

                  By:     /s/ Matthew E. Eutzler

                         MATTHEW E. EUTZLER
                         Florida State Bar No: 50665
                         *Attorneys for Nutrien Ag Solutions, Inc. formerly known as Crop Production Services, Inc.*
                         2611 North Patterson Street, 2nd Floor (31602)
                         Post Office Box 4540
                         Valdosta, Georgia 31604-4540
                         Telephone: 229-245-7823
                         Facsimile: 229-245-7825
                         Email: meutzler@mcdr-law.com

/s/ Timothy G. Moore

Robert H. Chappell, III (admitted *pro hac vice*)
Virginia State Bar No: 31698
Timothy G. Moore (admitted *pro hac vice*)
Virginia State Bar No: 41730
SPOTTS FAIN PC
*Attorneys for Nutrien Ag Solutions, Inc. formerly known as Crop Production Services, Inc.*
411 East Franklin Street, Suite 600 (23219)
Post Office Box 1555
Richmond, Virginia 23218
Telephone: 804-697-2000
Facsimile: 804-697-2067
Email: rchappell@spottsfain.com
Email: tmoore@spottsfain.com