**ORDERED.**

**Dated: April 13, 2023**

Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

KAREN W. HALL,
SPUDDOG FARM PROPERTIES, LLC,

Case No. 3:22-bk-01326-BAJ
Case No. 3:22-bk-01341-BAJ
Chapter 11

Debtors.
_____________________________________/

NUTRIEN AG SOLUTIONS, INC., formerly Known as Crop Production Services, Inc.,

Plaintiff,

v.

Adv. No. 3:22-ap-00062-BAJ

KAREN W. HALL,
SPUDDOG FARM PROPERTIES, LLC,
BENNY F. HALL, SR., individually and trading as Benny F. Hall & Sons Produce,
BENNY F. HALL & SONS, LLC,
BENNY F. HALL & SONS TRUCKING CO., INCORPORATED,
EASTERN SHORE GRAIN, INCORPORATED,
HOLDEN'S CREEK FARM, LLC, and
FARM PROPERTIES, LLC,

Defendants.
_____________________________________/

**MEMORANDUM OPINION GRANTING, IN PART, AND DENYING, IN PART, MOTIONS TO DISMISS**

This Case is before the Court on the *Motion to Dismiss* (Doc. 6) filed by Karen W. Hall ("Mrs. Hall") and Spuddog Farm Properties, LLC ("Spuddog") (collectively the "Debtors"), the *Motion to Dismiss* (Doc. 7) (collectively the "Motions") filed by Benny F. Hall & Sons Trucking Co., Incorporated ("BFH Trucking"), Benny F. Hall & Sons, LLC ("BFH LLC"), Benny F. Hall, Sr., individually and trading as H&M Farms ("Mr. Hall"), Benny F. Hall & Sons Produce ("BFH Produce"), Eastern Shore Grain, Incorporated ("ES Grain"), Holden's Creek Farm, LLC ("HC Farm"), and Farm Properties, LLC ("FP LLC") (collectively the "Nondebtors"), the *Responses* (Docs. 11, 12) filed by Nutrien Ag Solutions, Inc., formerly known as Crop Production Services, Inc. ("Nutrien Ag"), the *Reply* (Doc. 21) filed by the Nondebtors, the *Supplemental Memorandum* (Doc. 24) filed by Nutrien Ag, and the *Reply* (Doc. 25) filed by the Debtors. Nutrien Ag initiated this proceeding by filing an Adversary Complaint against the Defendants. (the "Complaint") (Doc. 1). Each of the Complaint's eleven counts seeks an exception to discharge pursuant to 11 U.S.C. § 523(a). Count I relates to all the Defendants. Counts II, X, and XI seek nondischargeability exceptions against the Debtors. The remaining counts, Counts III through IX, seek nondischargeability determinations solely against Mrs. Hall.

The parties dispute whether the exceptions to discharge under § 523(a) apply to non-individual debtors receiving a discharge under 11 U.S.C. § 1192. Although case law on Subchapter V is still evolving, all bankruptcy courts that have considered this issue have held that the exceptions to discharge under § 523(a) do not apply to corporate debtors receiving a discharge under § 1192. The Court agrees with these bankruptcy courts.

With respect to Count III, the parties dispute whether the trust fund doctrine is sufficient to meet the Fiduciary Capacity Exception. Nutrien Ag relies on Virginia law, which the Court finds is insufficient to meet the Fiduciary Capacity Exception under the facts of this case. The parties further dispute whether the remaining counts, Counts I, II and IV through XI, contain sufficient factual allegations to survive the Motions as to Mrs. Hall. The Court finds that they do.

Finally, the Nondebtors argue that they are not subject to an action under § 523(a) because they have not filed bankruptcy. (Doc. 7, p. 14). The Court agrees with this proposition; however, Nutrien Ag is not seeking a § 523 determination against the Nondebtors. The Court will not dismiss the Nondebtors at this juncture because they are indispensable parties as to Count I.

**Background**

On March 5, 2018, Nutrien Ag filed a lawsuit in Virginia state court (the "2018 Lawsuit") against Mr. Hall, BFH Produce, BFH LLC, and H&M Potato Farms, LLC ("H&M Farms"). (Doc. 1, p. 3). Nutrien Ag later amended its complaint to add counts against Mrs. Hall. In 2019, Nutrien Ag obtained a partial final judgment against the defendants named in the 2018 Lawsuit, except for Mrs. Hall. (Doc. 1, pp. 3-4). Based upon information obtained during post-judgment discovery, Nutrien Ag initiated another lawsuit in Virginia state court in 2020 (the "2020 Lawsuit"). At a hearing on April 27, 2022, the state court granted Nutrien Ag's motion to consolidate the 2018 Lawsuit and the 2020 Lawsuit. That consolidated action remains pending against Mrs. Hall, Mr. Hall, BFH LLC, BFH Trucking, ES Grain, Spuddog, HC Farm, and FP LLC.

In July of 2022, the Debtors each filed a voluntary petition under Subchapter V of the Bankruptcy Code. In their amended schedules, the Debtors each listed Nutrien Ag as an unsecured creditor with a contingent, disputed, unliquidated claim for $3,000,000. Nutrien Ag alleges that Mr. and Mrs. Hall own and control BFH LLC, HC Farm, Spuddog, FP LLC, ES Grain, and BFH

Trucking, which are all Virginia companies. Nutrien Ag alleges that Mr. and Mrs. Hall have used these companies as conduits for numerous transfers of real and personal property since 2015, when BFH LLC first began experiencing financial difficulties. (Doc. 1, pp. 8-32). Nutrien Ag alleges that Mr. and Mrs. Hall orchestrated these transfers to avoid paying Nutrien Ag for debts owed by them individually or by companies they control. The Defendants dispute these allegations.

**Motion to Dismiss Standard**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint and asks the Court to determine whether the complaint sets forth sufficient factual allegations to establish a claim for relief. The Court must determine whether the complaint satisfies Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, the Complaint must contain enough factual matter (taken as true) to "raise [the] right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[N]aked assertions devoid of further factual enhancement" will not satisfy Rule 8(a)(2)'s requirement of a short plain statement of the claim showing the pleader is entitled to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 557, 127 S. Ct. 1955) (internal quotations omitted). Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Id. A mere possibility that a defendant acted in contravention of the law will not suffice. Id. at 679. Although the Court must accept all well-pled facts as true, it is not required to accept legal conclusions. Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678. The Court construes the

factual allegations in the Complaint "in the light most favorable to the plaintiff." McCone v. Pitney Bowes, Inc., 582 F. App'x 798, 799 (11th Cir. 2014).

All counts in the Complaint relate to a fraudulent scheme allegedly perpetrated by the Defendants. A heightened pleading standard applies to the factual allegations related to fraud. Federal Rule of Civil Procedure 9(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7009, requires a plaintiff to plead fraud with particularity, but permits a plaintiff to allege state of mind generally. The Court must consider this heightened pleading standard "in light of the liberal pleading requirement of Rule 8." Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 451 (S.D.N.Y. 2007).

## Analysis

A. 11 U.S.C. § 523(a) & Subchapter V Corporate Discharge Under 11 U.S.C. § 1192

Congress created Subchapter V through the Small Business Reorganization Act of 2019 (the "SBRA"). Cantwell-Cleary Co. v. Cleary Packaging, LLC (In re Cleary Packaging, LLC), 36 F.4th 509, 514 (4th Cir. 2022). The SBRA added various provisions to the Bankruptcy Code, including § 1192, which controls the extent of a discharge entered after completion of payments under a Subchapter V plan confirmed nonconsensually. See 11 U.S.C. § 1192. The Court must determine whether the nineteen subsections under § 523(a) apply to a corporate debtor that receives a discharge pursuant to § 1192, which provides that "any debt—of the kind specified in section 523(a)" is excepted from discharge when a plan is confirmed via cramdown under § 1191(b).[1] In turn, § 523(a) provides that "[a] discharge under section 727, 1141, *1192*, 1228(a), 1228(b), or 1328(b) of this title does not discharge an *individual debtor* from any debt" outlined in any of its

[1] Any Subchapter V corporate debtor who confirms a *consensual* plan would undoubtedly not be subject to a § 523 dischargeability action, apart from the very narrow circumstances provided in § 1141(d)(6). Unlike § 1192, § 1141 includes specific references to "a debtor who is an individual" and "a debtor that is a corporation." Compare 11 U.S.C. § 1141(d)(2), (d)(6) with 11 U.S.C. § 1192(1), (2).

nineteen subsections. 11 U.S.C. § 523(a) (emphasis added). The two sections ostensibly conflict because § 523(a) refers specifically to individuals, while § 1192 on its face does not specifically distinguish between individuals and corporations. Cleary Packaging, LLC, 36 F.4th at 517 (describing the relationship between the two sections as "clumsy"). "Given the novelty of Subchapter V," case law on this issue is limited. See Avion Funding, LLC v. GFS Indus., LLC (In re GFS Indus., LLC), 647 B.R. 337, 341 (Bankr. W.D. Tex. 2022).

The Fourth Circuit Court of Appeals, the only court of appeals to address the issue, ruled that § 523(a) applies both to individuals and corporations receiving a discharge under § 1192. Cleary Packaging, LLC, 36 F.4th at 517-18. Although the Court finds that the Fourth Circuit's decision is well-written, the Court disagrees with the Fourth Circuit's reasoning and conclusion in Cleary Packaging, LLC. Instead, the Court agrees with the five bankruptcy courts that have addressed this issue. Those courts concluded that the exceptions to discharge under § 523(a) do not apply to corporate debtors receiving a discharge under § 1192. Avion Funding, 647 B.R. at 351-52; Jennings v. Lapeer Aviation, Inc. (In re LaPeer Aviation, Inc.), Adv. No. 22-03002, 2022 Bankr. LEXIS 1032, 2022 WL 1110072 (Bankr. E.D. Mich. Apr. 13, 2022); Catt v. Rtech Fabrications, LLC (In re Rtech Fabrications, LLC), 635 B.R. 559 (Bankr. D. Idaho 2021); Cantwell-Cleary Co., Inc., v. Cleary Packaging (In re Cleary Packaging, LLC), 630 B.R. 466 (Bankr. D. Md. 2021), rev'd 36 F.4th 509 (4th Cir. 2022); Gaske v. Satellite Rests. Inc. (In re Satellite Rests. Inc.), 626 B.R. 871 (Bankr. D. Md. 2021).

The Court reaches this conclusion primarily because the SBRA amended the language of § 523(a) to add a reference to § 1192. If Congress intended for § 523(a) exceptions to apply to corporations receiving a discharge under § 1192, then this addition was unnecessary. See Avion Funding, 647 B.R. at 343. The theory advanced by Nutrien Ag and the Fourth Circuit would render

that addition superfluous and violate a canon of statutory construction. That canon directs courts to advance an interpretation that will "render every word operative, rather than one which may make some [words] idle and nugatory." Id. (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69, 174 (2012)). Most bankruptcy courts deciding this issue have relied upon this canon when reaching their decisions. See id.; Rtech Fabrications, 635 B.R. at 565 (determining that its interpretation must give effect to § 523(a)'s reference to § 1192); Satellite Rests., 626 B.R. at 876 (stating that "[a] statute should be construed . . . so that no part will be inoperative or superfluous"); Lapeer Aviation, 2022 Bankr. LEXIS 1032, *5 (adopting the reasoning in Rtech Fabrications and Satellite Rests.). The application of this principle provides the most compelling and logical basis for the Court's conclusion on this issue. Notably, the Fourth Circuit did not address this rule of construction.

Instead, the Fourth Circuit relied upon the rule of construction that a specific provision controls over a general provision where the two provisions conflict. Cleary Packaging, LLC, 36 F.4th at 515. Specifically, the Fourth Circuit stated "while § 523(a) references numerous discharge provisions of the Bankruptcy Code, § 1192(2) is the more specific, addressing only Subchapter V discharges." Id. Even if the Court were to accept the reasoning that § 1192 has a more specific *purpose* than § 523(a), the Court finds that the *language* of § 523(a) is more specific than the *language* of § 1192(2). The language of § 523(a) specifically references "individuals," while § 1192(2) does not reference individuals or corporations. Thus, the specific language in § 523(a) controls over the general language in § 1192(2). See D. Ginsberg & Sons, Inc. v. Popkin, 285 U.S. 204, 208 (1932) ("Specific terms prevail over the general in the same or another statute which might otherwise be controlling."); Georgia ex. Rel. Bowers v. Dairymen, Inc., 813 F. Supp. 1580, 1585 (S.D. Ga. 1991) ("[I]t is a recognized principle of statutory construction that specific

language controls general statutory language."). If § 1192(2) specifically referenced individuals or corporations, as § 1141(d) does, the result might be different. See supra note 1.

The Fourth Circuit further opines that the conclusion reached by the bankruptcy courts "would also create difficulty in reconciling § 523(a) with § 1141(d)(6)." Cleary Packing, LLC, 36 F.4th at 516. In support of this position, the Fourth Circuit notes that § 1141 is included in the § 523(a) list of exceptions to dischargeability applicable to individual debtors, yet courts still apply certain § 523(a) exceptions to corporations based on § 1141(d)(6). The Court disagrees and finds no difficulty reconciling its interpretation with the interplay between § 523(a) and § 1141(d)(6). Notably, unlike § 1192(2), § 1141(d)(6) is extremely specific and only applies to "a corporation" receiving a standard Chapter 11 discharge and only excepts debts "of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that [are] owed to a domestic governmental unit." 11 U.S.C. § 1141(d)(6). Therefore, the principle that specific language controls over general language makes generally accepted interpretations of § 523(a) and § 1141(d)(6) easily reconcilable with the Court's conclusion regarding § 523(a) and § 1192.

The Court also finds that the structure of § 1141(d)(6), which references specific subsections of § 523(a), further invalidates the conclusion reached by the Fourth Circuit. The Fourth Circuit equates debts "of the kind specified in section 523(a)" to debts under § 523(a)(1)-(19), thus disregarding the introductory language of § 523(a) that limits those discharge exceptions to individuals. See Cleary Packaging, LLC, 36 F.4th at 515. If Congress had intended this interpretation for § 1192, it could have straightforwardly referred to paragraphs (1)-(19) of § 523(a), much like § 1141(d)(6)(A) refers to specific subsections, instead of only referring to § 523(a). In re Rtech Fabrications, LLC, 635 B.R. 559, 565 (Bankr. D. Idaho 2021); § 1141(d)(6) (refers to debts "of a kind specified in paragraph 2(A) or (2)(B) of section 523(a)").

Based on the foregoing, Subchapter V corporate debtors that receive a discharge under § 1192 are not subject to § 523(a). Rules of statutory interpretation dictate this result, and the Court finds it unnecessary to proceed down a rabbit hole by discussing pre-SBRA case law, the purpose of Chapter 11, or the legislative history of the SBRA. Accordingly, Spuddog cannot be subject to a § 523(a) determination as asserted in Counts I, II, X and XI.

B. Count III Claim Against Mrs. Hall: Fiduciary Capacity Exception

Relying on the trust fund doctrine[2] under Virginia law and a Virginia dissolution statute (Doc. 1, pp. 44-46), Nutrien Ag seeks an exception to discharge under the "Fiduciary Capacity Exception." Spring Valley Produce, Inc. v. Forrest (In re Forrest), 47 F.4th 1229, 1235 (11th Cir. 2022). Fiduciary capacity under § 523(a)(4) is much narrower than "the traditional meaning of the term 'fiduciary.'" Miramar Resources v. Shultz (In re Shultz), 208 B.R. 723, 728 (Bankr. M.D. Fla. 1997). The Eleventh Circuit recently set forth a three-part test to determine "whether a debtor is acting in a 'fiduciary capacity' under § 523(a)(4)," articulating the test as follows:

> First, the relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries. Second, the relationship must define sufficient trust-like duties imposed on the trustee with respect to the trust res and beneficiaries to create a "technical" trust, with the strongest indicia of a technical trust being the duty to segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose. Third, the debtor must be acting in a fiduciary capacity before the act of fraud or defalcation creating the debt.

In re Forrest, 47 F.4th 1229, 1234 (11th Cir. 2022).

Upon review, the Court finds that the trust fund doctrine under Virginia law[3] does not meet the third requirement set forth in Forrest. Under Virginia law, creditors hold no cause of action for breach of the trust fund doctrine absent self-dealing by directors. Bank of America v.

---

[2] The trust fund doctrine is a common law doctrine that dates back to an 1824 opinion, Wood v. Dummer, 30 F. Cas. 435, F. Cas. No. 17944, No. 17944 (C.C.D. Me. 1824).

[3] "[S]tate law is relevant in the determination of fiduciary duties under § 523(a)(4)." In re Shultz, 208 B.R. at 728.

Musselman, 222 F. Supp. 2d 792, 798-99 (E.D. Va. 2002). Based on this self-dealing requirement, the trust fund doctrine is analogous to a constructive trust because it is "a trust that may arise in the future if improper acts occur." Swimmer v. Moeller (In re Moeller), 466 B.R. 525 (Bankr. S.D. Cal. 2012) (finding that the term "trust fund doctrine" is a misnomer and does not support the existence of an express or technical trust). Because the trust fund doctrine in Virginia only exists in conjunction with self-dealing, the trust fund doctrine resembles a constructive trust to which § 523(a)(4) cannot apply. See Forrest, 47 F.4th at 1246 (finding a PACA trust does not meet the Fiduciary Capacity Exception because it resembles a constructive trust).

The trust fund doctrine under Virginia law also fails the second requirement set forth in Forrest because it does not impose sufficient trust-like duties to create a technical trust. Virginia common law does not impose any specific duties on managers or otherwise establish a relationship between a manager and the monies of the limited liability company. KMK Factoring, L.L.C. v. McKnew (In re McKnew), 270 B.R. 593, 629 (Bankr. E.D. Va. 2001). "[T]he term 'trust fund' is used only by way of analogy or metaphor." Centra Bank, Inc. v. Burton (In re Burton), 416 B.R. 539 (Bankr. N.D.W. Va. 2009). The trust fund doctrine does not create a "direct or express trust attached to the property." E.g., Hollins v. Brierfield Coal & Iron Co., 150 U.S. 371, 381-82, 14 S. Ct. 127, 37 L. Ed. 1113 (1893); see also 7 Collier on Bankruptcy P 1108.09[4][a] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2009) ("The trust fund doctrine . . . should not be[] interpreted literally; the assets of an insolvent corporation are not an actual trust, and the directors are not actually trustees."). Directors owe fiduciary duties to shareholders, including the duty of good faith, the duty of loyalty, and the duty of care. Stone v. Ritter, 911 A.2d 362, 369-70 (Del. 2006). These general fiduciary duties are more significant than those duties imposed by the trust fund doctrine. It would be a strange result if the less onerous duties imposed by the trust fund

doctrine were to meet the Fiduciary Capacity Exception, while the general fiduciary duties owed by directors to shareholders are insufficient to meet the Fiduciary Capacity Exception. See Florida Dep't of Ins. V. Blackburn (In re Blackburn), 209 B.R. 4, 9 (Bankr. M.D. Fla. 1997). Therefore, the trust fund doctrine under Virginia law fails the second requirement in Forrest.

Furthermore, the Court finds that Count III fails because "[u]nder Virginia law the general rule is that no direct action lies to a creditor of a corporation against its directors . . . for improper performance or failure in performance of their duties." Schnelling v. Crawford (In re James River Coal), 360 B.R. 139 at 171 (quoting Anderson v. Bundy, 161 Va. 1, 171 S.E. 501, 508 (1933)) (internal quotations omitted). Consequently, Nutrien Ag's reliance on Shultz and James River Coal is misplaced. Both of those cases involved an action brought by a corporation or a trustee acting as assignee of the corporation's rights, not a direct action brought by a single creditor. Id. ("various causes of action . . . were assigned and conveyed to the Trust.")[4]; In re Shultz, 208 B.R. 723, 727 (Bankr. M.D. Fla. 1997)[5]. As a creditor holds no right to a direct action against the officers, a lone creditor is unable to state a claim under the Fiduciary Capacity Exception based upon the trust fund doctrine. Wachovia Sec., LLC v. Jahelka (In re Jahelka), 442 B.R. 663, 671 (Bankr. N.D. Ill. 2010); Econ. Dev. Growth Enters. Corp. v. McDermott (In re McDermott), 434 B.R. 271, 281 (Bankr. N.D.N.Y. 2010).

Finally, although not discussed extensively by the parties, the Court finds that Virginia Code § 13.1-1049 cannot form the basis for a cause of action under the Fiduciary Capacity Exception. Nutiren Ag offered no case law that Virginia Code § 13.1-1049 creates a technical

---

[4] James River Coal is further distinguishable because it involved a corporation, whereas the instant case involves limited liability companies. James River Coal also did not discuss the Fiduciary Capacity Exception.

[5] Shultz is further distinguishable because it applied Delaware common law, which at the time permitted a direct right of action by a creditor under the trust fund doctrine, but now only permits such claims if brought derivatively. Quadrant Structured Prods. Co., LTD. V. Vertin, 115 A.3d 535, 544-46 (Del. Ch. 2015).

trust as required under the Fiduciary Capacity Exception. Also, no provision in the Virginia L.L.C. Act imposes trust-like obligations on managers with respect to the monies of a limited liability company. In re McKnew, 270 B.R. at 630. Based on the foregoing, the Motions are granted as to Count III.

C. Remaining Counts Against Mrs. Hall: Counts I, II and IV through XI

The Court finds that the Complaint sets forth sufficient factual allegations to state claims against Mrs. Hall in the remaining counts, Counts I, II and IV through XI. Furthermore, the remaining counts allege facts with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standard. Also, the Complaint contains sufficient detail with respect to Mrs. Hall's state of mind, which may be plead generally under Rule 9(b). In re Albanese, 96 B.R. 376, 379 (Bankr. M.D. Fla. 1989) ("Evidence of intent may be inferred from surrounding circumstances.").

D. Count I as to Nondebtors and Spuddog: Veil Piercing Claim under 11 U.S.C. § 523(a)

On its face, Count I of the Complaint seeks an exception to discharge against all the Defendants, including the Nondebtors, based on corporate veil piercing. (Doc. 1, pp. 32-40). The Court does not have jurisdiction to make such a dischargeability determination against the Nondebtors. In re Pal Nissan, Inc., 126 B.R. 966, 973 (Bankr. W.D. Mich. 1991) ("Section 523(a) only covers instances when debts of a *debtor* shall be determined nondischargeable.") (emphasis in original).

Nevertheless, the Court will deny the Motions as to the Nondebtors and Spuddog because they are necessary parties. The Nondebtors and Spuddog are necessary parties if, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 9(a).[6] To determine that Mrs. Hall is liable under an alter ego or veil piercing theory, the Court must

[6] Federal Rule of Civil Procedure 19 applies in adversary proceeding. Fed. R. Bankr. P. 7019.

necessarily determine the liability of the corporate entity, even if that entity is now defunct or merely a holding company. Nebraskaland, Inc. v. Ryan (In re Ryan), 2022 Bankr. LEXIS 2661, *20-21 (Bankr. E.D.N.Y. Sept. 27, 2022); see also Morris v. State Dep't of Taxation & Fin., 82 N.Y. 2d 135, 144 (1993) (an attempt to pierce the corporate veil "is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners").

Because the Court cannot determine dischargeability as to Mrs. Hall under a veil piercing theory without determining the liability of the entities that she allegedly misused, the Nondebtors and Spuddog are necessary parties. Moreover, the Court has "subject matter jurisdiction and constitutional authority to adjudicate state law claims as part of a dischargeability proceeding." Kyle-Wolf v. McClure (In re McClure), 625 B.R. 733, 738 (Bankr. C.D. Ill. 2021).

Although the Nondebtors and Spuddog are necessary parties for a dischargeability determination as to Mrs. Hall under Count I, the Court shall make no determination under § 523(a) or otherwise enter a judgment as to the Nondebtors or Spuddog. Based on the foregoing, the Motions are denied, in part, with respect to the Nondebtors and Spuddog under Count I.

## **Conclusion**

In summary, the Court joins the other bankruptcy courts that have unanimously concluded that the exceptions to discharge under § 523(a) do not apply to corporate debtors receiving a discharge under § 1192. Additionally, based on the facts of this case, the trust fund doctrine under Virginia law does not form the basis for a claim under the Fiduciary Capacity Exception. The Court also finds that the Complaint contains sufficient factual allegations to state claims against Mrs. Hall in Counts I, II, and IV through XI. Finally, the Nondebtors and Spuddog are necessary parties as to Count I, however, the Court will not make a dischargeability determination regarding those parties. The Court will enter a separate order consistent with this Memorandum Opinion.

Attorney Daniel E. Etlinger is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of the order.